478 P.2d 94

STATE of Arizona ex rel. Moise BERGER, Maricopa County Attorney, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARI-COPA, the Honorable Gordon Farley, Visiting Judge Thereof; and Robert WHYTE, Real Party In Interest, Respondents.

No. 10038.

Supreme Court of Arizona, In Banc.

Dec. 23, 1970.

Moise Berger, Maricopa County Atty. by John Trombino, Deputy County Atty., Phoenix, for petitioner.

Ross P. Lee, Public Defender by Ken Skiff, Deputy Public Defender, Phoenix, for respondents.

LOCKWOOD, Chief Justice:

Defendant Whyte was charged with the crime of burglary in Cause No. 61447, and with the crime of burglary and grand theft in Cause No. 61318, in the Superior Court of Maricopa County. Cause No. 61318 was set for trial on April 7, 1970. On the same day the defendant presented a Motion for a Bill of Particulars reading as follows:

"The defendant, ROBERT WHYTE, through his attorney undersigned and pursuant to Rule 116, Arizona Rules of Criminal Procedure, respectfully moves the Court for an Order directing the County Attorney to file and serve a Bill of Particulars in the above described information, particularly setting forth the following, all such information being needed for the defense of the alleged crime.

"1. The full name of the 'confidential reliable informant' in this case.

"2. The address of the above informant.

"3. The occupation and place of employment of the informant."

The Honorable Gordon Farley, a Visiting Judge in Maricopa County heard the motion and although it was made only in Cause No. 61318, the trial judge felt that the same motion would later be applied to Cause No. 61447, and therefore granted the Bill of Particulars to apply to both causes.

Thereafter the State, through the County Attorney, applied to this Court for a special action to annul, review or set aside the order granting the motion for a bill of particulars. This Court accepted jurisdiction of the special action on the basis of certiorari and ordered that the entire record from the Superior Court be certified to this Court. It shows the following:

On January 9, 1970 someone broke into the home of Michone Walter in northeast

Phoenix, during her absence, and stole a sewing machine, typewriter, radio, electric shaver, camera, and T.V.

On January 12, 1970 someone broke into the home of Josephine Patterson, in northeast Phoenix, during her absence, and stole a color T.V.

Both crimes were reported to the police.

On the morning of January 13, 1970 an unidentified informant phoned Phoenix Police Officer Midkiff. Neither the name nor the sex of the informant appears in the record; for convenience we shall refer to the informant as "informant", and treat the sex as male. Informant asked Midkiff whether the latter was aware of a burglary "that had occurred in northeast Phoenix in the last three or four days where a television, portable typewriter and sewing machine were taken." Midkiff found the Walter burglary report and, after reading it, decided that informant had "some kind of direct information," since burglary reports are confidential and not accessible to the public.

In the same telephone conversation informant also mentioned another burglary in which a television had been taken, and stated that he thought that he knew who had committed both burglaries, and that he knew "where at least some of the property was." Before the conversation ended, informant identified himself to Midkiff, and stated that he wanted his name kept secret, as he was afraid that the burglar would do him physical harm.

A few hours later, Officer Midkiff, accompanied by Detective Jarrett met with informant who stated that he had seen the stolen articles in the trunk of defendant Whyte's car and that defendant was trying to sell them at prices less than their obvious value. Midkiff testified that "at that time, I was convinced that he [informant] had no idea of the actual name of the victim or the actual location, for that matter."

At that meeting, Midkiff also described to informant the portable radio stolen from the Walter home, but informant didn't recall having seen it. Midkiff asked him to

find out, and to advise him where the stolen property was, as soon as possible. Informant agreed to try.

At a second meeting later that day, informant reported that he had just come from defendant Whyte's home, had been inside, and had seen the portable radio which fitted the description in the burglary report of the Walter home.

Midkiff returned to his office. Shortly thereafter he received a call from informant stating that there was a "stolen color television set in the back of a pickup truck" parked in front of the "Live It Up" bar. He also said that the T.V. set "was from a burglary that we had discussed earlier" (i. e. the Patterson home.) He said that the T.V. set was visible from the outside of the truck.

Officers Midkiff and Jarrett went to the bar and watched the truck. The T.V. was only partially covered with a blanket so that they could see that it was a color T.V. console. After about fifteen minutes, Ray Robinette and Ray Peterson emerged from the bar. As they tried to enter the truck, the officers stopped them. When asked whether the T.V. set was his, Robinette admitted owning the truck but indicated that he had no idea how the T.V. got loaded on it. After Officer Midkiff ascertained that the serial number on the set corresponded with that on the report of the burglary of the Patterson home, he arrested the men and seized the set as evidence. The two men were then questioned separately without useful results.

The following day during further questioning of Robinette while in jail, he admitted that he, Peterson, Whyte, and one Bob Williams had loaded the T.V. on the truck at the home of Whyte on the morning of January 13th; that Whyte had told him that he had to get rid of the set; that the four men had driven to the bar, where three of them remained while Whyte unsuccessfully tried to sell the T.V. to a music store a few doors away; and that Whyte and Williams had left just prior to the approach of the officers. Robinette also admitted

that Whyte had borrowed the truck on the date that Patterson's home had been burglarized. Whyte allegedly paid Robinette $25 for the use of the truck on the two occasions.

Based on the information from informant, and the verification of informant's reliability by finding the T.V. in the truck, Midkiff secured a search warrant. Upon executing it at Whyte's home the officer found the radio, typewriter, sewing machine, and shaver stolen from the Walter home, but did not find Mrs. Walter's T.V. Several witnesses supplied further evidence of defendant's implication in the crimes.

Midkiff testified that informant "indicated that he was not present" when the articles were taken from the Walter home and that he did not know either the victim's name or the specific location from which the articles were stolen. He made the same statements about the Patterson burglary. He did not say how he got his information, except that he had seen the television in the truck, and the other items in defendant's home.

Midkiff also testified that he later learned that informant had been used previously as an informer by the Sheriff's office; that Midkiff had continued to use informant in subsequent cases; and that revelation of informant's identity would destroy his usefulness in the future, and would expose him to possible bodily injury.

As a result of the evidence obtained, the state filed a second degree burglary charge against Whyte relating to the Walter home burglary, and charges of second degree burglary and grand theft relating to the Patterson home. Preliminary hearings were held and Whyte was bound over on both charges. The Walter burglary charge bears number 61447 and the Patterson burglary and grand theft charges bear number 61318 in the Superior Court.

Just prior to the time cause number 61318 was to be tried, the defense filed a motion to require the county attorney to disclose the real name of the informant. The trial judge ruled that informant's real name

would have to be revealed to defendant's counsel, but the case was continued to give the State an opportunity to petition this Court for a special action.

The motion was made only in case number 61318, but the presiding judge seemed to feel that the same motion would later be filed in case number 61447 so that the ruling ought to apply to both. Though neither side seemed to agree, the county attorney stated in open court that

"If that is the Court's desire, I have no objection to making the showings as to both."

Our decision, therefore, will apply to both cases, since the issues appear to be almost identical.

The state argues that much of its police work depends upon informers, and that unless their anonymity is protected by the courts, law enforcement will be dealt a crippling blow; that once an informer's identity is revealed, his usefulness ceases and his life is in danger; and that knowledge of the failure of the police to protect their informers' identity will discourage other informers from helping the police.

The defendant argues that under the doctrine of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, the prosecution must reveal an informer's name whenever he is a material witness for the defense—i. e. whenever he was present at the commission of the crime, was an accomplice, or "set it up" as is often done in narcotic cases. Defendant insists that these possibilities are only examples of cases where the informer's name must be revealed, and that they are not intended to be all-inclusive. He argues that the information given by the informant to the police in the instant case was so detailed as to indicate that informant either fit one of the above classes of informers or got his information by hearing or overhearing a statement made by one who fits one of those classes of persons.

Defendant contends that since he is innocent, he has no way of knowing who was present at the crime and that the burden

of proving that the informer does not come under one of the above headings cannot be on the defendant, and therefore must be on the state

Defendant attacks as hearsay, Midkiff's testimony that informant said that he had not been present when the crime was committed. The state has expressly stated that it will not use the informer as a witness at defendant's trial. Defendant has expressly disavowed any intention to argue that informant's identity is needed to show that he was so unreliable as to make the search warrant—and the evidence discovered through it—illegal, and states that informant's name is desired only because he is believed to be a material witness.

In Roviaro, supra, the United States Supreme Court spelled out the general principles for determining when a defendant is entitled to force the prosecution to disclose the name of its informer. The Court said:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law * * *. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation * * *. A * * * limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and if the government withholds the information, dismiss the action. 353 U.S. 59–61, 77 S.Ct. 627.

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. 62–63, 77 S.Ct. 628.

The Court reversed because:

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of the government witnesses * * *. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt on petitioner's identity or the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package * * *." 353 U.S. 64, 77 S.Ct. 630.

Justice Clark, in his dissent, explained the reason for the privilege as follows:

"Enforcement [of narcotic laws] is, therefore, most difficult without the use of 'stool pigeons' or informants. Their use has long had the approval of the courts. To give them protection governments have always followed a policy of non-disclosure of their identities. Experience teaches that once this policy is relaxed * * * its effectiveness is destroyed. Once an informant is known the drug traffickers are quick to retaliate. Dead men tell no tales." 353 U.S. 66–67, 77 S.Ct. 631.

In State v. Tisnado, 105 Ariz. 23, 458 P.2d 957 (1969) we followed Roviaro, supra. We indicated that in determining whether

fairness to the defendant requires disclosure, we must first ask what purpose would be served by the disclosure. In Tisnado the informant participated in the crime of illegal possession of marijuana. The prosecution refused to name the informer. Defendant knew the informer and used him as his witness, without learning that he was the informer, until it came out in the testimony at the trial. We held that the refusal to disclose the informer's identity did not prejudice the defendant, since defendant interviewed him before trial and used him as his witness. It was not a case of a defense witness whose identity the defendant did not know; rather it was a case of a witness whom defendant did know, but did not know that he was the informer, so that refusal to disclose the name did not deprive him of the ability to find an eye witness. In short, disclosure would not have served any purpose useful to the defendant.

In Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, the Court repeated the criteria laid down in Roviaro, supra, and noted that:

"Petitioner did not develop any such criteria with reference to the merits of the case * * *. Having failed to develop the criteria of Roviaro necessitating disclosure on the merits, we cannot say on this record that the name of the informant was necessary to his defense * * *. Never did petitioner's counsel indicate how the informant's testimony could help establish petitioner's innocence." 376 U.S. at 535, 84 S.Ct. at 829.

See also Acosta v. State, 403 S.W.2d 434, Tex.Cr.App. (1966).

■ Defendant here did not meet the criteria of Roviaro. Defendant in the instant case has shown merely that the informer had information that the stolen articles came from northeast Phoenix. That, in itself, is insufficient to place the informer at the scene of the crime, to make him an accomplice or witness, to prove that he heard or overheard a statement by one who took part in the crime, or even to prove that his testimony would be material at the trial.

■ On the question of the burden of proving that the informant might be a material witness on the merits of the case, it should be noted that there is no reason why this burden cannot be placed on the defendant. The burden is always on the state to prove every element of the crime beyond a reasonable doubt. But whether the informant would be a material witness on the merits, is not an element of the crime of burglary. A defendant seeking to overcome the basic policy of protecting an informant's identity, is properly given the burden of proving that the informant is likely to have evidence bearing on the merits of the case.

In Honore v. Superior Court of Alameda County, 70 Cal.2d 162, 74 Cal.Rptr. 233, 449 P.2d 169 the California Court discussed whether and when a defendant is entitled to know the identity of an informer and stated:

"Their [defendant's] *burden* extends only to a showing that 'in view of the evidence, the informant would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.'" (Emphasis added.) 74 Cal.Rptr. 236–237, 449 P.2d 172–173.

We hold that the burden is on the defendant to make the necessary showing. See also People v. Uptgraft, 8 Cal.App.3d Supp. 1, 87 Cal.Rptr. 459 (1970).

The order of the trial judge, dated April 9, 1970, granting the motion for a bill of particulars in both cases is hereby vacated, and both are remanded to the superior court for further proceedings.

STRUCKMEYER, V. C. J., and UDALL, McFARLAND and HAYS, JJ., concur.