489 P.2d 277

**STATE of Arizona, Appellee,**

v.

**Arturo MARTINEZ, Appellant.**

**No. I CA–CR 313.**

Court of Appeals of Arizona,
Division 1,
Department B.
Oct. 12, 1971.

Gary K. Nelson, Atty. Gen., by Paul J. Prato, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender for Maricopa County, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

HAIRE, Judge.

Defendant Arturo Martinez appeals from his conviction of the crime of possession of heroin. The trial judge suspended the imposition of sentence and placed Martinez on probation for five years. Although several questions are raised on this appeal, we find it necessary to consider only the defendant's contention that the trial court erred in failing to require the state to reveal the identity of the informant who furnished information leading to

the search which resulted in defendant's arrest and subsequent conviction.

The facts show that on November 19, 1969 an informant notified the Phoenix Police Department that one "Boli" was selling heroin in Room 14 of the Portland Hotel in Phoenix. A search warrant was issued and a group of five officers proceeded to the hotel. The officers arrived at approximately 8:25 p. m. They knocked on the door and inquired "is Boli there?" The officers testified that an affirmative response came from the room and that the door was then opened by defendant. Defendant was alone in the room and apparently had been relaxing on the bed reading the newspaper, having removed his jacket and changed from his street shoes to shower slippers. Upon searching the room the officers discovered a large rubber balloon on top of a portable clothes closet. The balloon was covered with a piece of transparent plastic about a foot square. Inside the large balloon the officers found two other balloons. One of these contained 32 grams of procaine, and the other contained 14.1 grams of a brown powder, which was later determined to be 42% heroin. A witness for the state testified that if the procaine and heroin here involved had been mixed into a substance containing 10% heroin it would have made approximately 560 "papers" worth an estimated $5,000 if sold on the street.

The defendant took the stand on his own behalf and testified that the day of his arrest was the first day he had ever been in Phoenix. He testified that he was a resident of California who worked as a migratory fruit worker and who consequently divided his time between Sacramento, Stockton and Los Angeles, California. During the course of his employment in the fields in California he became acquainted with another field worker named Nato Ramos, and that during the Fall of 1969 Ramos had borrowed $35 from the defendant so that he could go to Phoenix and see his wife. Ramos had said that when he was in Phoenix he stayed at the Portland Hotel and that if and when the defendant ever came to Phoenix he should look him up. With the onset of winter weather the defendant did decide to leave California in the company of two fellow workers who were going through Phoenix on their way to Albuquerque and would take defendant along if he would contribute $10 toward the gas. When the three men arrived in Phoenix, the defendant was left at the Greyhound Bus Station, and from there he went to three different beer parlors. He stated that during this time he was drinking beer and the idea was developing in his mind that he should go see Ramos and get his $35 back. The defendant was told where the Portland Hotel was so he walked in that direction after leaving the last beer parlor and when he got there he found a man and a woman standing out front. He stated that he asked them where Ramos lived and they told him, so he went up to Room 14 and knocked on the dor, and that after a short wait he decided that there was not going to be a response and turned to go; that at that moment he met Ramos who was coming out of the bathroom. They greeted each other and Ramos said that he had just finished shaving and that he was now going to take a shower, suggesting that the defendant go into Ramos' room and make himself at home and read the newspaper while waiting for him. The defendant testified that he then did so, taking off his jacket and shoes, and replacing the shoes with some shower slippers which he carried with him in his coat pocket, and that he got on the bed and began to read the newspaper. Five or six minutes later the police entered and the events detailed by the state's witnesses took place.

The defendant denied that he ever responded affirmatively or answered any questions propounded by the police to the effect that the room was his. The defendant denied having anything to do with the heroin in the room and he denied even knowing that it was there. The defendant introduced into evidence a page from the registration book of the Portland Hotel showing the registration for Room 14 for

November 19, 1969. It revealed that there were two names registered to Room 14 on that day, and that neither of them was the defendant. He also introduced in evidence samples of his handwriting showing that the handwriting on the registration page was not his, and in addition had the hotel clerk who was on duty at the time the registration occurred testify that he had never seen the defendant before in his life. In essence, defendant claimed to have arrived at the hotel only moments before the officers, and speculated that Ramos was the "Boli" named by the informant and that he had made his escape after observing the activity in his room when he returned from showering.

In the officer's affidavit which led to the issuance of the search warrant in this matter, the officer stated that his information came from:

"Reliable informant, who saw with own eyes, 'Boli,' M/M, 39, in possession of Heroin on his person and in his residence, 11 South 3rd Street, Portland Hotel, Room # 14, Phoenix, Arizona.

"The informant saw with own eyes and touched the Heroin that was in 'Boli,' M/M, 39, while in Room #14 of the Portland Hotel. The informant was present when 'Boli' sold an amount of Heroin to another suspect."

From the foregoing it is clear that the basic issue involved in the trial concerned the defendant's relationship to Room 14 and the heroin found therein. Defendant contends that if the identity of the informant is disclosed and he is compelled to testify it will be proved that the defendant is not "Boli", thus corroborating his denial of knowledge or ownership of the heroin found in the room.

 When must the state's privilege of nondisclosure of the identity of a confidential informant give way to the defendant's claim that the informant's testimony might be essential and material to his defense? This question has frequently aris-en in the courts and the multitude of decisions with varying results indicates the difficulties which have been encountered in attempting to formulate principles which would be of aid to a trial court in ruling on such motions. The United States Supreme Court in Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed. 2d 639 (1957), held that no fixed rule was justifiable, stating:

"The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

The foregoing statement by the United States Supreme Court has been quoted with approval by the Arizona Supreme Court in State ex rel. Berger v. Superior Court, 106 Ariz. 470, 478 P.2d 94 (1970), and State v. Kelly, 99 Ariz. 136, 407 P.2d 95 (1965). *See also* State v. Tisnado, 105 Ariz. 23, 458 P.2d 957 (1969). The Arizona decisions have clearly established that when the informant was present at the time of, or participated in, the commission of the crime charged, then he would be a material witness on the issue of defendant's guilt and his identity must be disclosed. *See* State v. Godwin, 106 Ariz. 252, 475 P.2d 236 (1970); Rivera v. Superior Court, 6 Ariz.App. 117, 430 P.2d 696 (1967). Applying the balancing test to the facts of Godwin and Rivera, it is clear that the individual's right to prepare his defense outweighed the public interest in nondisclosure. However, under less extreme circumstances the mere fact that an informant might conceivably be considered by defendant to be a possible witness on defendant's behalf on the issue of defendant's guilt does not necessarily mean that the informant's identity must be disclosed. As stated by this Court, in State ex rel.

Berger v. Hughes, 14 Ariz.App. 107, 481 P.2d 278, 279 (1971):

"We hazard the guess that very few defendants charged with possession [of narcotics] lack an interest in the name of the confidential informant and we further hazard the guess that the disclosure of that name might conceivably be useful to the defendant. These are not the tests."

The burden is upon the defendant to make a showing that the informant is likely to have evidence bearing upon the merits of the case and that nondisclosure of his identity would deprive defendant of a fair trial. State ex rel. Berger v. Superior Court, *supra*; State v. Castro, 13 Ariz. App. 240, 475 P.2d 725 (review denied January 19, 1971).

■ The evidence presented to the trial court on the defendant's motion to compel disclosure of the informant's identity demonstrated a sharp conflict as to defendant's relationship to Room 14 and the heroin found therein. Defendant steadfastly denied any knowledge of the heroin, and the state's case was based solely on circumstantial evidence. There was no evidence introduced establishing in fact who resided in Room 14 of the Portland Hotel. Both the day and night clerks of the hotel testified that they had never seen defendant before. Further, defendant's name did not appear on the hotel registry. This conflict in the evidence establishes that the informant would be a material witness possessing information which would have a definite effect on the issue of defendant's guilt. Applying the test enunciated by the United States Supreme Court in Roviaro and approved by the Arizona Supreme Court, and considering particularly the paucity of evidence connecting defendant with dominion and control over Room 14 and knowledge of the heroin found therein, we are of the opinion that the possible significance and materiality of the informant's testimony on the issue of whether defendant knowingly possessed heroin outweighs the public interest against nondis-

closure. While we are sensitive to the fact that compelled disclosure often forces the state to dismiss the case, it is the view of this court that the state cannot refuse to disclose the identity of this witness who can best establish who resided in Room 14 of the Portland Hotel and possessed the heroin found therein. For closely analogous fact situations where the Court required disclosure, see People v. Hunt, 4 Cal.3d 231, 93 Cal.Rptr. 197, 481 P.2d 205 (1971); People v. Garcia, 67 Cal.2d 830, 64 Cal.Rptr. 110, 434 P.2d 366 (1967).

The judgment of the trial court is therefore reversed. If the state desires to retry defendant, the identity of the confidential informant must be disclosed.

JACOBSON, P. J., concurs.

EUBANK, Judge (dissenting).

Reluctantly I must dissent from the majority opinion. Although I agree with their statements of law, I do not agree with that law's application to the facts of this case.

In State ex rel. Berger v. Superior Court, 106 Ariz. 470, 474, 478 P.2d 94, 98 (1970), our Supreme Court held that the burden of proving that the informant might be a material witness on the merits of the case was upon the defendant requesting disclosure of the informant because of the basic public policy of protecting an informant's identity. This means to me that the defendant must put forward evidence which is both believable and reasonable to the trial judge in the first instance. What is the trial court's duty if he does not believe the defendant's evidence? Or to state it in another way, does the trial court really have any choice but to grant disclosure of an informant if a defendant fabricates a story that touches all bases for disclosure? It is my opinion that the court does. The trial judge has the obligation to balance the public interests as set out in Roviaro, *supra*, majority opinion. One of these interests is certainly that the defendant's evidence supporting his request

of a disclosure of the identity of the informer be reasonable and believable to the trial judge.

In the case at bar, the defendant testified in detail to the events that occurred on November 19, 1969, the date of arrest. The record also shows that on cross-examination he became a different man when questioned about the days and weeks preceding November 19th. His testimony was vague, his memory was bad and his testimony relating to his whereabouts prior to coming to Phoenix was, in my opinion, improbable. Under these circumstances the trial court could do little else but deny disclosure because the defendant had failed to carry his "burden of proof".

I do not believe that Roviaro, *supra*, requires the trial court to grant disclosure without weighing the defendant's evidence supporting disclosure. If the trial court exercises this discretion, as a fact-finder, it should be supported on appeal if there is evidence in the record to support his determination. In my opinion the record supports the denial of disclosure.