STATE OF HAWAII, Plaintiff-Appellee, *v.* FREDA L. DAVENPORT, et al., Defendants, and JOHN B. RADFORD, Defendant-Appellant.

No. 5366

November 21, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON and KOBAYASHI, JJ.

OPINION OF THE COURT BY LEVINSON, J.

This case raises questions concerning the validity of a search warrant issued solely on the basis of an informer's tip, the manner in which that warrant was executed by the police, and whether the circumstances of the defendant's trial required the prosecution to disclose a confidential informer's

identity in order to assist the defendant in establishing his innocence.

The defendant was convicted in circuit court of the possession of marijuana and cocaine, both in violation of HRS § 329-5 (as amended L. 1969, Act 161, repealed and now superseded by the Hawaii Penal Code, L. 1972, Act 9, and the Uniform Controlled Substances Act, L. 1972, Act 10), and the possession of amphetamines, in violation of HRS §§ 328-82(3) & 86(c). Evidence introduced by the prosecution at trial included drugs of the foregoing description seized by the police in the course of a search of the defendant's bedroom. That search, part of a more extensive search of the entire house in which the defendant resided, was executed pursuant to a warrant issued by a district magistrate,[1] and resulted in the arrest and conviction on drug charges of three individuals in addition to the defendant. Only the defendant, however, appealed. For reasons stated hereinafter, we affirm the defendant's conviction.

### I. THE VALIDITY OF THE SEARCH AND SEIZURE

We start from the proposition that evidence obtained by means of an unconstitutional search and seizure[2] is inadmissible in a criminal prosecution, and that a conviction obtained thereby must be reversed. *Mapp v. Ohio*, 367 U.S. 643 (1961); *State v. Pokini*, 45 Haw. 295, 367 P.2d 499 (1961). The touchstone in determining whether a search pursuant to a warrant was constitutionally infirm from its inception is an analysis of the facts, usually in the form of an affidavit, presented to the issuing judge by the officials seeking the warrant. If those facts, viewed exclusively and in their

---

[1]Effective January 1, 1972, the title was changed from district magistrate to district judge by L. 1970, Act 188, reorganizing the district courts.

[2]The fourth amendment to the United States Constitution provides in part that " [t ]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." This provision is applicable to the states through the due process clause of the fourteenth amendment. Mapp v. Ohio, 367 U.S. 643 (1961). The State Constitution affords protection against "invasions of privacy" in addition to unreasonable searches and seizures. HAWAII CONST. art. I, § 5.

totality, are substantial enough to engender the amorphous state of mind known as "probable cause,"[3] then the warrant, and hence the search, are at least prima facie constitutional. *See Forkosh, The Constitutional Right to Challenge the Content of Affidavits in Warrants Issued under the Fourth Amendment,* 34 OHIO STATE L.J. 297 (1973).

Though the subjective mental state of probable cause is inherently incapable of precise and mathematical definition, we are not without guidelines in determining when, under particular circumstances, the constitutionally accepted minimums of probable cause have been established. Where, as in this case, a search warrant is premised solely on representations in an affidavit by a police officer that he has received information from an unnamed informer that contraband is being secreted in a particular location, that warrant is not rendered invalid by the fact alone that the information is hearsay. *See, e.g., Jones v. United States,* 362 U.S. 257, 269-71 (1960). However, under the constitutionally mandated test of *Aguilar v. Texas,* 378 U.S. 108, 114 (1964), the affidavit must set out

> some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was "credible" or his information "reliable."

(emphasis added) [citations omitted]. In *Aguilar,* the affidavit indicated neither the source of the informer's conclusions nor the basis of the affiant's trust in the

---

[3]Perhaps no better formulation of the probable cause concept exists than the statement contained in Carroll *v.* United States, 267 U.S. 132, 162 (1925) that probable cause exists when

> the facts and circumstances within [one's] knowledge and of which [one] ha[s] reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that [a crime was being committed].

Certainly this is the most often quoted articulation of probable cause in Hawaiian case law. *See, e.g.,* State v. Gustafson, 55 Haw. 65, 69, 515 P.2d 1256, 1259 (1973); State v. Delmondo, 54 Haw. 552, 554, 512 P.2d 551, 552 (1973); State v. Chong, 52 Haw. 226, 231, 473 P.2d 567, 571 (1970); State v. Texeira, 50 Haw. 138, 142, 433 P.2d 593, 597 (1967).

informer's credibility, and hence the Court held the search warrant inadequate.

Subsequent decisions refined this two-prong test of *Aguilar* in the contexts of particular factual situations. Thus, in *McCray v. Illinois,* 386 U.S. 300 (1967), the Court held that affirmations by a confidential informer to a police officer that he had personally observed the defendant selling drugs coupled with the fact that the informer had provided the officer with reliable information at least fifteen times in the past satisfied the *Aguilar* test and justified a warrantless arrest and incident search of the defendant.[4] *Spinelli v. United States,* 393 U.S. 410 (1969), established that when an informer's tip is a necessary element of probable cause in a search warrant, its adequacy must turn on whether the tip alone passes the *Aguilar* test. Thus, the observation by the police in *Spinelli* of at best vaguely suspicious behavior by the defendant did not serve to remedy the fundamental deficiencies of the affidavit with respect to the informer's tip — it remained as conclusory as the affidavit in *Aguilar* both as to the basis of the informer's conclusions and the reasons for crediting them. The Court noted in dictum, however, that an allegation in the affidavit that the informer had personally observed the defendant's criminal behavior would have satisfied the "underlying circumstances" prong of the *Aguilar* test. *Id.* at 416. Finally, *United States v. Harris,* 403 U.S. 573 (1971), held that an affidavit setting forth the personal knowledge of an informer with respect to illegal activities upon which a warrant was based met the "underlying circumstances" prong of the *Aguilar* test.

The facts of the present case, when perceived in the context of the foregoing cases and also the opinion of this court in *State v. Texeira,* 50 Haw. 138, 433 P.2d 593 (1967), present little novelty. The warrant to search the defendant's house rested entirely on the following assertions contained in an affidavit prepared by officer Sidney Hayakawa:

---

[4] The problem of probable cause based on an informer's tip is fundamentally the same whether the issue is the validity of an arrest without warrant and search incident thereto or the validity of a search pursuant to a warrant. *See* Spinelli *v.* United States, 393 U.S. 410, 417 n.5 (1969).

That your affiant, on December 7, 1971, at 10:00 p.m., Tuesday, received information from a reliable confidential informant, who related that David HUDDLESTON and Guy CONTEMPLO is [sic] selling Marihuana from within the residence located at 3274-A Lower Road; that within the past forty-eight (48) hours, the informant personally observed Marihuana being sold and used from the said premises and informant further states that Marihuana is presently being secreted within the said premises at 3274-A Lower Road;

That your affiant believes and knows that the said informer is reliable; that this belief and knowledge is based on affiant's past experience with the said informer; that the affiant has received information from the said informer approximately twenty-one (21) times;

That the affiant personally verified the information given him by the said informer approximately eleven (11) times, and each time the information has proved to be reliable; that based on the information received from said informer in the past, and verified, approximately seven (7) arrests for Narcotic violations are still pending court action in the State Courts.

Under the first, or "underlying circumstances," prong of the *Aguilar* test, the affidavit clearly passes constitutional muster since it relates that the basis of the informer's conclusion that illicit drug activity was being conducted at the specified location was his personal observations thereof. *See United States v. Harris, supra; McCray v. Illinois, supra*. The affidavit was indeed ampler in this regard than the informer's phone call in *State v. Texeira, supra,* which asserted merely that the defendant was in the possession of drugs, without specifying how the informer acquired his information. While we upheld the validity of an arrest without warrant which was based on that telephone call, we were also careful to point out that the police verified many of the details of the informer's tip before acting on it. Compare *Draper v. United States,* 358 U.S. 307 (1959). Although the officer in this case, unlike the police in *Texeira,* did not attempt to verify the accuracy of the information beyond checking to see whether the house the

informer described existed, neither *Harris* nor *McCray* requires such verification if the tip derives from the informer's personal observations and if there exist other grounds to support the informer's veracity.

Grounds to credit the informer's tip in this case, in satisfaction of the second prong of the *Aguilar* test, can be found in the affidavit's assertion that the informer had provided officer Hayakawa with accurate information in the past on at least eleven occasions. Looking at the statements in the affidavit as a whole, it is apparent that officer Hayakawa judged the informer's previous accuracy in terms of the number of *arrests* his information led to. However, if the past accuracy of an informer could be demonstrated only by the number of convictions to which his information leads, in theory no informer could ever be proven reliable on this ground. The first conviction and, in turn, all subsequent convictions resulting from his tips would be subject to attack on the ground that all evidence stemming therefrom was illegally seized, since the informer's "reliability" could not have been shown by past information leading to more arrests. The circularity and hence the absurdity of this reasoning is apparent. We avoid the problem by holding that information which leads to arrests and prosecutions, as did the past information provided by the informer in this case, is "reliable" in the common sense meaning of that word. It is, after all, a common sense and practical interpretation of the facts, not hypertechnical and legally precise analysis, that lies at the heart of probable cause. *See State v. Texeira, supra* at 142-43, 433 P.2d at 597, *citing Brinegar v. United States,* 338 U.S. 160, 176 (1949).

The affidavit in this case further states that officer Hayakawa "personally verified" only eleven of the approximately twenty-one leads provided by the informer. While this record arguably shows that the informer was somewhat more than half right in the past (and hence somewhat less than half wrong), it also may be read to indicate only that officer Hayakawa *personally* verified the

informer's tips eleven times, without necessarily implying that the remaining ten tips proved fruitless.[5]

We accept the proposition that " [a] policeman's affidavit 'should not be judged as an entry in an essay contest,' *Spinelli* [*v. United States,* ] *supra* at 438 (Fortas, J., dissenting), but rather, must be judged by the facts it contains." *United States v. Harris, supra* at 579. Though the affidavit was somewhat clumsy in its presentation of the informer's record of past reliability, we conclude that in citing that the informer's prior tips led to the discovery of illegal drug activity on at least eleven occasions and at least seven arrests and prosecutions, the affidavit established the informer's credibility to such a degree that the district judge could properly conclude that his tip was "probably" accurate. *See id.* at 584 ("the issue in warrant proceedings is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises"); *McCray v. Illinois, supra* at 303-04 (provision by informer of "accurate" information to one policeman on fifteen or sixteen occasions, and to another policeman on twenty to twenty-five occasions satisfies "credibility" prong of *Aguilar* test for probable cause); *State v. Texeira, supra* at 139, 433 P.2d at 595 (provision by informer of "accurate" information on twenty to thirty occasions satisfies "credibility" prong of *Aguilar*).

It follows from the foregoing analysis that the search warrant in this case meets relevant state and federal constitutional standards.[6] The matter of probable cause to

---

[5]The affidavit states that officer Hayakawa "received" information from the informer approximately twenty-one times. By contrast, it asserts that officer Hayakawa "personally verified" the tips approximately eleven times and that "each time" they proved reliable. One perfectly plausible reading of the affidavit, therefore, would indicate that the remaining ten tips were merely not pursued by officer Hayakawa and *not* that they proved unreliable. Although officer Hayakawa testified at trial that the informer had shown himself to be less reliable after the tip in this case than before it, this *subsequent* lapse in credibility does not vitiate the existence of probable cause as of the time the present search warrant issued.

[6]While we are free to interpret our state constitution so as to provide greater protection against illegal searches and seizures than that mandated by the fourth amendment to the Federal Constitution, *see* State *v.* Texeira, *supra* at 142 n.2, 433 P.2d at 597 n.2. we find that in the area of sufficiency of affidavits to support search

search the defendant's residence is not entirely free from doubt as it almost never is in cases of this sort. However, we should accord considerable weight to the admittedly unbiased judgment of the district magistrate who issued the warrant in this case in order to encourage police officers, whenever possible, to present their cases for arrests or searches to impartial judicial officers *before* taking action. *Compare United States v. Ventresca,* 380 U.S. 102, 109 (1965) *with State v. Texeira, supra* at 143-45, 433 P.2d at 597-98. While we still consider it to be "unfortunate," nonetheless the informer system remains necessary for the maintenance of channels of information to the police in their fight against crime. *Id.* at 143, 433 P.2d at 597. We must conclude on the facts of this case that " [w]hatever added protection might be obtained by requiring a stricter standard of proof [of informer reliability] at a preliminary stage would pale in light of the impairment of criminal investigation." *Id.* at 143-44, 433 P.2d at 598.

## II. THE EXECUTION OF THE WARRANT

Officer Hayakawa testified that on the morning of December 9, 1971, he and several other police officers, armed with the warrant to search for marijuana, arrived at the house in which the defendant resided. He approached a rear door to the house, knocked five times and announced, "Police officer, open up, we have a search warrant." While waiting approximately thirty seconds for a response, officer Hayakawa and at least one other officer heard sounds of "running" within. Officer Walter Ragsdale thereupon broke down the door and the officers rushed into the house, where they found at least one occupant up and about in the hallway and the other residents, including the defendant, asleep or half-awake in their rooms. Immediately the police assembled everyone in the living room. Thereafter, in the course of a particularized search of each of the bedrooms, officers

warrants, the present federal standards provide highly sensible and principled guidelines for determining acceptable police practices. *Cf. id.* Therefore, we adopt them as establishing the parameters of state law on the subject as well.

Ragsdale and Hayakawa discovered in the defendant's bedroom, on a table top less than four feet from the mattress on which the defendant had been sleeping, a clear cellophane bag containing a grass-like substance resembling marijuana, a wooden matchbox, and a wallet. The officers proceeded to open the matchbox, in which they found eighty-six white tablets and a bag containing a white powder substance, and the wallet, in which they found identification cards belonging to the defendant. Upon later laboratory analysis, the grass-like substance was found to be marijuana, the pills were found to be amphetamines, and the powder was found to be cocaine. These drugs, and the identification found in the wallet, were introduced as evidence in the defendant's trial.

The defendant contends that the manner in which the police gained entry to the house was "unreasonable" within the meaning of the Federal and State Constitutions. *See Miller v. United States*, 357 U.S. 301 (1958). We cannot agree. The prohibition against unreasonable searches and seizures is not violated when "exigent circumstances" dictate that the police must proceed forcefully and swiftly to achieve an objective which is otherwise constitutionally permissible. *See Ker v. California*, 374 U.S. 23, 38-41 (1963). Since drugs are by their nature easily destroyed or secreted, *see id.*, exigent circumstances justifying forced entry in searches for drugs exist when the facts show that the occupants of the suspected locale are aware of the police presence and are taking steps which the police realistically fear may lead to destruction of the contraband. *See, e.g., Commonwealth v. Dial*, 445 Pa. 251, 285 A.2d 125 (1971). In *Dial*, as in this case, the police knocked on the door to the premises to be searched, announced their identity and purpose, and waited long enough to hear sounds of running within. The court properly held that in the circumstances the police had no choice but to effect a forced entry, since the alternative might well have been the destruction of the illicit drugs for which they were searching.

The defendant would have us disregard the testimony of officers Hayakawa and Ragsdale and credit his own testimony that the police never announced their identity or

purpose, and that no one in the house ever attempted to destroy evidence or escape. However, the police version of the morning's events, corroborated in all substantial respects by both officers, was accepted as true by the trial judge. We cannot say that this finding was not supported by substantial evidence, *see State v. Stuart,* 51 Haw. 656, 466 P.2d 444 (1970), and hence we hold that exigent circumstances justified the police in executing the warrant in the manner they did in this case.

Nor can we agree with the defendant that the police exceeded the proper scope of the warrant when they searched the matchbox and wallet in the defendant's room. These items were side by side with a bag containing what appeared to be marijuana, and rested in open view on the top of a table. Officers Hayakawa and Ragsdale, both veteran narcotics investigators, testified that in their experience marijuana was often secreted in just such receptacles. In view of the easy mobility of such contraband, a warrant specifying the particular premises within which it is hidden is sufficiently detailed to satisfy the constitutional requirement that a warrant "particularly describe the place to be searched." *See United States v. Wong,* 470 F.2d 129 (9th Cir. 1972); *United States v. Combs,* 468 F.2d 1390 (6th Cir. 1972), *cert. denied,* 411 U.S. 948 (1973). Moreover, such a warrant gives the officers executing it authority to search, in a reasonable manner, whatever spots within the described premises their professional experience indicates may be used as a cache. *See id.*

Certainly a matchbox and a wallet, which are plausible repositories for marijuana and which are exposed on the top of a table, are not beyond the scrutiny of police officers executing a warrant which describes "marijuana" as the thing to be seized. Nor need the officers close their eyes when a search of such containers reveals illegal drugs other than marijuana. An otherwise permissible search is not rendered unlawful merely because in the course thereof one drug is discovered instead of a different drug, since there is little chance in such circumstances that a search for the latter is being used as a pretext to search for the former. *See United*

*States v. Pacelli,* 470 F.2d 67 (2d Cir. 1972), *cert. denied,* 410 U.S. 983 (1973); *Government of Virgin Islands v. Lopez,* 459 F.2d 5 (3d Cir. 1972). So long as the searching officer is in a position where he is lawfully entitled to be, the seizure of *any* evidence of crime is permissible. *See Warden v. Hayden,* 387 U.S. 294 (1967).

We therefore hold that the warrant in this case was lawfully executed by the police and the evidence used against the defendant at trial properly seized.

### III. DIVULGENCE OF THE CONFIDENTIAL INFORMER'S IDENTITY AT TRIAL

The defendant contends that in light of the particular facts of his case the prosecution had an obligation to divulge the identity of the confidential informer for the purpose of showing that the defendant was innocent of the *knowing* possession of drugs. His argument in this respect differs from the argument made in *State v. Texeira, supra,* in which we held that there is no right to mandatory disclosure of an informer's identity when the sole purpose thereof is to attack the existence of probable cause. *See McCray v. Illinois, supra.*

This case more closely approximates the facts of *Roviaro v. United States,* 353 U.S. 53 (1957) than those of *Texeira* or *McCray.* In *Roviaro,* the Court held that the identity of a confidential informer must be revealed where the defendant makes a showing that the informer's testimony may be crucial on the issue of guilt or innocence. The defendant in *Roviaro* was charged with the knowing transportation of heroin. His arrest was effectuated through information supplied by an informer "who had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged." *Id.* at 55. In view of the close nexus between the informer and the defendant in the commission of the alleged crime, the Court held that the ability of the

defendant to prepare a meaningful defense outweighed the public interest in maintaining informer confidentiality, and hence that the informer's identity should have been revealed. In doing so, however, the Court observed that "no fixed rule with respect to disclosure is justifiable." *Id.* at 62. Instead, the Court held,

> Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.*

The application of this balancing standard to the facts of the present case indicates that the trial court did not err in rejecting the defendant's request for disclosure. The crux of the defense on the issue of guilt or innocence was that the defendant was unaware of the presence of the drugs on the table top in his bedroom. However, the defendant admitted to being a resident of the house, and identified the bedroom in which the drugs were found by the police as "his" room. Indeed, he did not contest the fact that the drugs were found in open view on a table barely four feet from his bed, and that next to them on the table lay a wallet bearing his identification. Nevertheless, he asserts, the informer may have been a material witness in view of his presence in the house barely forty-eight hours prior to the search at a time when, according to the affidavit in support of the search warrant, two other residents of the house were involved in illicit drug transactions.

At best, however, the informer could have testified that the defendant was not present in the house at the time of these transactions and hence had no part in them — a fact to which the prosecution freely stipulated in any event. It is clear that the prosecution did not base its case against the defendant on any activity he might have undertaken in the presence of the informer, but rather on evidence of the defendant's knowing constructive possession of the drugs on the morning of the search. In the circumstances, we cannot say that "the possible significance of the informer's

testimony'' to the defense outweighed the "public interest in protecting the flow of information" *Roviaro v. United States, supra* at 62.[7]

In view of the evidence indicating the proximity of the defendant to drugs in open view in his own bedroom, we reject the contention that the trial court's finding that the defendant knowingly possessed these drugs was not supported by substantial evidence. Compare *State v. Dias*, 52 Haw. 100, 470 P.2d 510 (1970). We find the defendant's other allegations of error without merit.

Affirmed.

*David Bettencourt* (*Mattoch, Kemper & Brown* of counsel) for defendant-appellant.

*Larry L. Zenker*, Deputy Prosecuting Attorney (*Barry Chung*, Prosecuting Attorney, City and County of Honolulu, of counsel) for plaintiff-appellee.

---

[7]The defendant cites State *v*. Martinez, 15 Ariz. App. 430, 489 P.2d 277 (1971), in support of his argument for disclosure. In that case a confidential informer supplied the police with information that "Boli" was selling heroin in a particular hotel room. On the basis of that information, the police obtained a warrant to search the room. In executing the warrant, the police found the defendant lying on a bed within and discovered a hidden cache of heroin above a closet. The Arizona court of appeals held that the identity of the informer should have been revealed at the defendant's trial for possession of heroin, in view of the thrust of the defendant's chief defense that he was merely a casual visitor in the room of a friend and knew nothing of the room's contents. In the present case, however, the defendant admits to being a resident of the house and room which were searched. Moreover, in *Martinez*, unlike here, the prosecution did not stipulate that the defendant was not present when the informer observed illegal drug activity. Finally, the defendant in *Martinez* made a strong showing that the informer might be the *only* witness to support his defense that he was merely a casual, innocent visitor — a showing which was not made in this case. The foregoing analysis demonstrates that the result of requests for disclosure in prosecutions where informer identity is an issue turns largely on the specific facts and that broad generalizations about when disclosure is required are not possible. *See* State *v*. Texeira, *supra* at 145-48, 433 P.2d at 598-600. For a factual situation more closely analogous to this case than *Martinez*, and one in which the Arizona court of appeals reached the conclusion that disclosure was not warranted, *see* State *v*. De La Cruz, 19 Ariz. App. 166, 505 P.2d 1057 (1973).