624 P.2d 304

The STATE of Arizona, Appellee/Cross Appellant,

v.

Mark Anthony PARKER, Appellant/Cross Appellee.

No. 2 CA–CR 1941.

Court of Appeals of Arizona, Division 2.

July 30, 1980.

Rehearing Denied Sept. 5, 1980.

Review Granted Sept. 30, 1980.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, Stephen D. Neely, Pima County Atty., by Paul S. Banales, Deputy County Atty., Tucson, for appellee/cross appellant.

Richard C. Henry, Tucson, for appellant/cross appellee.

## OPINION

HOWARD, Judge.

A bullet fired by appellant went through the front door of an apartment striking six-month-old Chana Alderman in the head and killing her. The police did not know appellant fired the shot until the next day when the county attorney's office received an anonymous telephone call through "88-Crime" hot line, a means for citizens to report crimes. The caller said appellant was going to turn himself in, but in case he failed to do so, wanted the police to know that appellant was responsible for the shooting. Arrangements were made later that day to pay the tipster $200.

Appellant turned himself in, was indicted for manslaughter, A.R.S. Sec. 13–1103, and convicted by a jury of negligent homicide, A.R.S. Sec. 13–1102. He was sentenced by the trial court to four years in the Arizona State Prison.

## I

### AMENDMENT TO THE INDICTMENT

At the close of all the evidence appellant moved for a directed verdict of acquittal on the manslaughter charge. The state responded by moving to amend the indictment to allege negligent homicide. The trial court denied appellant's motion and the state's was then granted, appellant consenting to the amendment on condition that he could challenge both rulings on appeal.

Appellant contends that negligent homicide is not a lesser-included offense of man-

slaughter and further asserts that when the grand jury no-billed the negligent homicide charge, it precluded the amendment. We do not agree.

A.R.S. Sec. 13–1103(A)1. states that a person commits a manslaughter by " . . . Recklessly causing the death of another person; . . ." Manslaughter is a Class 3 felony, authorizing a term of imprisonment under A.R.S. Sec. 13–701(B)2. for five years.

A.R.S. Sec. 13–1102 states that a person is guilty of negligent homicide if that person causes the death of another person by means of criminal negligence. This is a Class 4 felony which under A.R.S. Sec. 13–701(B)3. authorizes imprisonment for four years.

A.R.S. Sec. 13–105 5.(c) states that the term "recklessly" means with respect to a result or a circumstance described by a statute defining an offense:

"that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in a situation . . . ."

A.R.S. Sec. 13–105 5.(d) states:

" 'Criminal negligence' means, with respect to a result or to a circumstance described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

There is one other statute that is of importance. A.R.S. Sec. 13–202(C) states:

"If a statute provides that criminal negligence suffices to establish an element of an offense, that element also is established if a person acts intentionally, knowingly or recklessly . . . ."

An offense is a lesser-included offense when a greater offense cannot be committed without necessarily committing the lesser offense. *State v. Dugan*, 125 Ariz. 194, 608 P.2d 771 (1980). Since under A.R.S. Sec. 13–202(C) a person who recklessly causes the death of another also acts with criminal negligence, it is clear that negligent homicide is a lesser-included offense of manslaughter, the reckless causing of the death of another, pursuant to A.R.S. Sec. 13–1103(A)1. An accused may be convicted of an offense different from that with which he was charged if it is included in the offense charged. *State v. Saunders*, 115 Ariz. 289, 564 P.2d 1255 (App.1977). Appellant's consent to the amendment was as unnecessary as the amendment itself. As for the grand jury's no bill of the lesser-included offense of negligent homicide, such action was a nullity since specification of an offense constitutes a charge of all offenses necessarily included therein. See Rule 13.-2(c), Arizona Rules of Criminal Procedure, 17 A.R.S.

## II

### THE DANGEROUS NATURE OF THE FELONY

When the indictment was returned by the grand jury, the county attorney added an "allegation of dangerous nature of the offense charged" which stated that the offense involved the use of a .22 calibre semi-automatic rifle. Over appellant's objection the trial court ruled that if the jury returned a guilty verdict, the court would decide the allegation of dangerousness. When the jury did return the verdict the trial court made a determination that the offense involved the use of a deadly weapon and sentenced appellant accordingly.

Appellant contends: (1) The allegation of dangerousness cannot be added by the county attorney but must be returned by the grand jury as part of the indictment; (2) when the trial court amended the indictment it failed to change an allegation of a violation of A.R.S. Sec. 13–604(G) to A.R.S. Sec. 13–604(F) therefore depriving itself of jurisdiction to sentence appellant under the

latter statute; (3) the mandatory sentence provisions of A.R.S. Sec. 13–604(K) constitutes cruel and unusual punishment as applied to the facts of this case; (4) A.R.S. Sec. 13–702(D)1. and 2. permit the trial court to consider the facts requiring mandatory time under A.R.S. Sec. 13–604(K) which is a more appropriate way of sentencing; and (5) the trial court erred in deciding the allegation of dangerousness instead of submitting it to the jury.

A.R.S. Sec. 13–604(K) states:

"The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if the previous conviction or the dangerous nature of the felony is charged in the indictment or information and admitted or found by the trier of fact. The court in its discretion may allow the allegation of a prior conviction or the dangerous nature of the felony at any time prior to trial...." For the purposes of this subsection, 'Dangerous nature of the felony' means a felony involving the use ... of a deadly weapon...." [1]

■ There are two reasons why the county attorney properly added the allegations of dangerousness to the indictment. First, the grand jury only has authority to charge public offenses and A.R.S. Sec. 13–604(K) is not a public offense. It is a penalty statute and merely enhances punishment. Cf. *State v. Birdsall*, 116 Ariz. 112, 568 P.2d 419 (1977). Second, the language of A.R.S. Sec. 13–604(K) demonstrates that grand jury action is unnecessary since it permits the addition of the allegation of dangerousness at any time prior to trial.

■ A.R.S. Sec. 13–604(G) contains the enhancement provisions for Class 3 felonies and was applicable to the manslaughter charge. When the trial court amended the indictment it failed to amend the allegation that the offense was in violation of A.R.S. Sec. 13–604(G) rather than A.R.S. Sec. 13–604(F). Contrary to appellant's contention this omission, which was technical error at best, did not deprive the court of jurisdiction and was waived by defense counsel's failure to object below.[2]

■ The state's filing the allegation of dangerousness exposed appellant to a mandatory sentence which was imposed by the trial court. Whether it is more "appropriate" to consider the use of a deadly weapon as an aggravating factor under A.R.S. Sec. 13–702(D) instead of alleging the use of a deadly weapon under A.R.S. Sec. 13–604(K), is a matter of prosecutorial discretion in the first instance. The imposition of a mandatory sentence in this case did not constitute cruel and unusual punishment because appellant was charged with criminal negligence. The Eighth Amendment to the United States Constitution prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime. See e. g., *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910); *Ingraham v. Wright*, 430 U.S. 651, 667 (1977); *Trop v. Dulles*, 356 U.S. 86, 100, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion). For crimes classified as felonies the length of the sentence actually imposed is purely a matter of legislative prerogative. *Rummel v. Estell*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (48 Law Week 4261, March 18, 1980). Upon the legislature's declaration that negligent homicide is a felony, it constitutionally had discretion to determine the punishment and whether said punishment should consist of a mandatory sentence. Cf. *State v. Williams*, 115 Ariz. 288, 564 P.2d 1255 (App.1977).

---

1. A .22-caliber rifle is a deadly weapon as defined in A.R.S. Sec. 13–105 9. and 12.

2. We do not at this time decide whether it is even necessary for the indictment to contain an allegation of the enhancement statute which may be applicable as long as there is an allegation of dangerousness as required by A.R.S. Sec. 13–604(K). For the contents of an indict-ment see Rule 13.2(b), Arizona Rules of Criminal Procedure, 17 A.R.S., which states: "The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to have violated." We note that a defendant does not "violate" an enhancement provision.

Unlike the allegation of a prior conviction, there is no rule or statute governing the procedure for determining the truthfulness of the allegation of dangerousness.[3] What is clear, however, is that under A.R.S. Sec. 13–604(K) the truthfulness is to be determined by the trier of fact which in this case was the jury. We need not reach the question of whether the trial court can decide, as a matter of law, that a deadly weapon was used since the necessary finding by the jury was implicit in its verdict. There was no question that the victim had been shot in the head, that is, struck by a bullet which had been fired by a rifle. Furthermore, we believe that the dangerous nature of the felony was admitted when counsel stipulated that the cause of death was a bullet wound through the head of the child. The trial court's determination of dangerousness was surplusage.

## III

### THE MOTION FOR MISTRIAL

During the direct examination of a member of the Tucson Police Department it was mentioned that the officer had met appellant sometime before. A defense motion for mistrial was denied by the trial court which instructed the jury to disregard the statement made by the police officer. Appellant contends that it was error to deny his motion. We do not agree. The testimony by the officer did not indicate that appellant had a prior record or previous trouble with the police. See *State v. Finn*, 111 Ariz. 271, 528 P.2d 615 (1974).

## IV

### THE RIFLE SCOPE

Appellant contends that the trial court erroneously admitted into evidence a scope which allegedly was on the rifle at the time of the shooting. He claims there was no foundation for admission of the scope. We do not agree. Phillip Lee, a state's witness, when shown a photograph of the rifle with the scope mounted on it,

stated that the scope looked like the one that was on the rifle prior to the shooting. Appellant told another witness, Lawrence Brown, that he was looking through the scope when he fired it that night. Brown remembered seeing that the scope was still on the rifle when appellant brought it back into the apartment. Two other individuals who were present remembered seeing the scope on the rifle when appellant returned. The scope was removed from the rifle during the time it was transferred from the apartment near where the incident occurred, and placed in the possession of Lawrence Brown's brother. Detective Olsen found the scope at Brown's residence. He positively identified the scope at trial as the one he had found. He had the scope put on the weapon and had it photographed. This was the photograph that witness Lee identified. In addition, the person who test-fired the rifle noticed that the rifle had scratch marks on it indicating that it had a scope mounted on it. There was also testimony that when the scope in question was mounted it seemed to fit the scratch marks on the rifle.

## V

### THE FAILURE TO DISQUALIFY THE PROSECUTING ATTORNEY

One of the main witnesses against appellant was Lawrence Brown. Prior to the trial, Mr. Brown had been arrested for criminal trespass. Pursuant to a written stipulation between Mr. Brown's attorney and Paul Banales, the prosecuting attorney in appellant's case, Brown was released on his own recognizance. While under arrest and before release from the jail, Brown told the police that he would assist in locating the rifle scope. When he was released on his own recognizance a "probation hold" was also lifted and Brown located the rifle scope.

Appellant moved to disqualify Mr. Banales from prosecuting the case on the ground that he would be needed as a wit-

---

**3.** The practice of some judges in Pima County is to submit the allegation to the jury with the forms of verdict and to instruct them to consider it if they find the defendant guilty.

ness so that appellant would be able to effectively cross-examine Mr. Brown by showing his motive for testifying, to-wit, that a "deal" had been made. Appellant contends denial of his motion was error. We do not agree. The trial court found that the prosecutor's testimony was not necessary to attack Brown's credibility. It is within the discretion of the trial court to decide whether a defendant may require a prosecuting attorney to testify in his behalf. *State v. Tuzon*, 118 Ariz. 205, 575 P.2d 1231 (1978). The testimony of Mr. Banales would have been merely cumulative since other witnesses were available to testify on the issues. See *State v. Bishop*, 118 Ariz. 263, 576 P.2d 122 (vacated on other grounds 439 U.S. 810 (1978)).

## VI

### THE "HOT LINE" CALL

■ The call-in system used by the tipster was organized to insure anonymity. No identification of the caller was asked for or given. No tape of the conversation was available. The tipster was assigned a number. A female called and arranged for the money to be picked up and the officer who arranged for the pick-up could not identify the male who picked up the money. Even if ordered to do so, the state could not furnish the identity of the tipster. Appellant claims the trial court erred in failing to order the police to take further steps to find the identity of the tipster and in prohibiting the defense from asking each witness, except Brown, whether or not he was the tipster. We do not agree. The burden was on appellant to prove that the informant was likely to give evidence bearing on the merits of the case. *State ex rel. Berger v. Superior Court*, 106 Ariz. 470, 478 P.2d 94 (1970). This was not done. It was appellant's main contention that the payment of the money could be used to impeach the credibility of the witness, if that witness was testifying at trial. However, the trial court found that the payment of the money would have no bearing on credibility. We agree with the trial court's conclusion. The information initially supplied by the tipster

was not contingent on the payment of any money. This was arranged after the tip had been received. Furthermore, the payment was not for any future testimony by the tipster.

## VII

### THE DENIAL OF A NEW TRIAL

Appellant finally contends that the trial court erred in denying his motion for new trial. This motion was based upon virtually all of the alleged errors previously discussed. There was no error and the trial court was correct in denying the motion.

The state has cross-appealed from the trial court's ruling that the state's test-firing of the rifle with the scope on it was not admissible in evidence. In view of our disposition of this case the issue is moot.

The cross-appeal by the state is dismissed and the judgment and sentence are affirmed.

HATHAWAY, C.J., and RICHMOND, J., concur.