ARTHUR AWAYA, Petitioner-Appellee, *v.* STATE OF HAWAII and THE CITY AND COUNTY OF HONOLULU, Respondents-Appellants.

NO. 9883

(S.P. NO. 6183)

MAY 8, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

The State of Hawaii and the City and County of Honolulu (State) appeal from the Decision and Order of the court below granting plaintiff Arthur Awaya's (Awaya) motion for the return of certain money and jewelry taken from apartment no. 1709, 2499 Kapiolani Boulevard (The Apartment) in execution of a search warrant. We hold that the trial court erred in ordering the money returned but was correct in doing so as to the jewelry. On remand the court below must decide whether the government should be allowed to retain the money, or whether it should be returned to Awaya.

On May 23, 1982, at approximately 6:30 p.m., police officer Stephen Q. H. Dung (Dung) and other officers began a search of The Apartment pursuant to a warrant describing the property sought as: "two (2) hexagon shaped wooden tables (utilized as card

tables) and standard American playing cards, . . . as property that constitutes evidence of the commission of an offense or property designed or intended for the use or which has been used as the means of committing an offense[.]"[1]

Upon entering The Apartment, the officers observed approximately ten females seated at a hexagonal table playing "blackjack." They were arrested for participating in a gambling game, and $3,345 in cash was seized as evidence. The officers continued the search of The Apartment for playing cards and found on the dining room table stacks of blue paper, 3 inches by 8 inches, that "appeared to be I.O.U. markers for persons borrowing money from the operators of the gambling game." In one of the bedrooms the officers found a locked two-drawer filing cabinet (cabinet).

Awaya, who was in The Apartment and had informed the officers that he was one of the operators of the gambling game, was directed to open the cabinet so that the officers could search it for playing cards. Awaya complied, but stated that he was not doing so of his free will. Within the cabinet the officers saw approximately seven decks of playing cards and what appeared to be gambling records, money, and the same type of blue paper sheets found previously. Nothing was seized from the cabinet at that time.

Leaving three officers at The Apartment, Dung went to obtain another search warrant. Before preparing the affidavit for the second warrant, Dung met with the informant who had furnished the information for Dung's first affidavit. The informant told him that the blue sheets of paper were used as "markers" or "I.O.U.s" for persons borrowing money from the "house" or the operators of the game; that he had seen persons leave expensive jewelry as collateral for the "markers"; that he had seen persons make "markers" in excess of five thousand dollars; and that either Awaya or a female, who were some of the operators, was usually present at the game.

---

[1] We reject as being without merit the State's argument that the designation of the tables and playing cards was not a description of specific property to be seized, but only examples of the kind of property to be seized as "designed or intended for the use or which has been used as the means of committing an offense." We understand the quoted language to be a limitation on the nature of the specifically designated articles. To give to the warrant the meaning propounded by the State would in fact make it an invalid general warrant. *State v. Kealoha,* 62 Haw. 166, 179, 613 P.2d 645, 653 (1980).

Dung prepared the second affidavit, which described the activities of the first search outlined above and the subsequent information from the informant, and obtained a second search warrant authorizing a search of The Apartment for "gambling records, United States Currency and any writing, paper, instrument, or articles of a kind commonly used in the operation of an illegal gambling scheme or enterprise[.]" Dung returned to The Apartment and continued the search. The further search included the cabinet and two trunks. The search ended in the early morning of May 24, 1982.

The inventory of seized articles included, *inter alia,* one "octagonal" table, two cases of playing cards, forty unopened decks of cards, fifty-one opened decks of cards, and $28,185 in cash found in the cabinet and in various other places in the Apartment. In addition, four watches and a diamond ring were seized from a trunk in one of the bedrooms. The jewelry and most of the money were found after the second warrant was issued.[2]

On June 20, 1983, no charges having yet been filed against him, Awaya moved under Rule 41(e), Hawaii Rules of Penal Procedure (HRPP) (1981),[3] for the return of all the property to him and its suppression "as evidence against him in any criminal proceeding."[4] The lower court granted the motion on January 31, 1984, and ordered the return of the property to Awaya.

---

[2] The parties make no attempt to differentiate between the money seized from within and without the cabinet or that found before or after the second warrant. Under the facts of this case those circumstances are not dispositive, since, as is discussed later in this opinion, the length of time the money has been held and other factors may require the government to return it all, except, perhaps, for that seized from the game in progress. *See* Hawaii Revised Statutes (HRS) § 712-1230 (Supp. 1984); *State v. Nobuhara,* 52 Haw. 319, 474 P.2d 707 (1970).

[3] Rule 41(e) reads as follows:
Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the court having jurisdiction to try the offense for the return of the property, or to suppress for use as evidence anything so obtained, or both. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial.

[4] Although Awaya moved for the return of all the property, he really seeks only the money and the jewelry. The jewelry does not belong to him; however, Awaya introduced into evidence written authorization from the owner to seek its return.

The questions raised are (I) whether the initial search of the cabinet exceeded the scope of the first warrant, and (II) if not, whether the property seized should nevertheless be returned to Awaya under Rule 41(e), HRPP.[5]

I.

A.

The State argues that under *State v. Davenport*, 55 Haw. 90, 516 P.2d 65 (1973), and *State v. Nabarro*, 55 Haw. 583, 525 P.2d 573 (1974), all the evidence found was subject to seizure because the first search warrant authorized the police officers "to search, in a reasonable manner, whatever spots within the described premises their professional experience indicates may be used as a cache." *Davenport*, 55 Haw. at 100, 516 P.2d at 72. The State contended at oral argument that there was really only one search, and that the second warrant was obtained only as a precaution.

In *Davenport* the warrant authorized a search for marijuana. The police found a plastic bag containing marijuana on a tabletop near Davenport's bed and searched a matchbox and a wallet which were lying alongside the bag, finding cocaine in the matchbox. On appeal from the trial court's denial of Davenport's motion to suppress, the supreme court held that the execution of the search did not exceed the scope of the warrant.[6]

Awaya argues, however, that the instant case is factually distinguishable from *Davenport* because in *Davenport* the police officers testified that their professional experience caused them to believe

---

[5] We do not find it necessary to consider the evidentiary matters urged as error by the State.

[6] The warrant in *Nabarro, supra,* was to search a hotel room for marijuana. The police searched the purse of a woman who was present in the room with the individuals who were the targets of the search. The supreme court cited the scope of search authority expounded in *Davenport* but held that a warrant authorizing the search of premises only did not authorize the search of an individual or her belongings when the only connection between the individual and the premises was her presence there. We do not consider *Nabarro's* limitation of *Davenport* to be relevant here.

that the receptacles searched were generally used to secrete narcotics, while here Officer Dung merely testified that he wanted to search the cabinet for cards and gambling records, without basing his desire to do so on knowledge gained from his professional experience.

However, in *Davenport* the supreme court indicated that it was the easy mobility of the marijuana that authorized the search of the receptacles as part of the premises to be searched. Moreover, it was the unusual nature of the receptacles in that case that caused the court to rely on the searching officers' knowledge gained from their professional experience to justify the search. We do not think such professional experience is pivotal in a case such as this where playing cards are also easy to move and common everyday experience teaches that a filing cabinet "may be used as a cache" for playing cards. The police were thus justified in searching the cabinet for playing cards pursuant to the first warrant.

When they came upon the gambling records and money, they then had cause to believe that more than a mere gambling game was taking place in the Apartment. Arguably, the police could not seize the records and the money at that point, since they were not described in the warrant as items to be searched for and seized. However, together with the further information from the informant, they provided probable cause for the issuance of the second warrant, and the second warrant authorized seizure of the money and the records.[7] The money was legally seized and Awaya's argument that there was no "nexus" between it and the first warrant is without merit.

However, the seizure of the jewelry was not justified under either warrant. Neither warrant specifically authorizes a search for jewelry, notwithstanding the fact that Dung's second affidavit contains information regarding the use of jewelry as collateral for the "markers," and its seizure cannot be justified under the language of the warrant referring to "articles of a kind commonly used in the operation of an illegal gambling scheme or enterprise[.]" *State v.*

---

[7] In *State v. Dorson*, 62 Haw. 377, 615 P.2d 740 (1980), the supreme court held that seizure of marijuana pursuant to a search warrant issued after the police impounded a house pending the obtaining and arrival of the warrant was illegal. The case at bar is distinguishable because here the police were already on the premises with a valid search warrant.

*Kealoha,* 62 Haw. 166, 174-75, 613 P.2d 645, 650-51 (1980). Under the clear language of Rule 41(e), the jewelry must be suppressed and "restored." *State v. Brighter,* 1 Haw. App. 248, 252, 617 P.2d 1226, 1229 (1980). On remand, the lower court is directed to order that the jewelry be restored forthwith.

### B.

Citing several cases from other jurisdictions, Awaya further argues that, once the table and playing cards were seized from the game, the police had obtained the evidence they were seeking, the authority of the first warrant was exhausted, and anything that was found after that is inadmissible. However, we find those cases inapplicable for the reason that the warrants involved therein or their affidavits described particularly the specific items that were being sought, and the searching officers seized other items after finding the particularly described evidence. The courts uniformly suppressed the unspecified items found after discovery of the described items. Thus, in *United States v. Odland,* 502 F.2d 148 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S. Ct. 679, 42 L.Ed.2d 680 (1974), a particular envelope containing cocaine was the object; in *United States v. Lazar,* 347 F. Supp. 225 (E.D. Pa. 1972), agents were looking for specific certificates; in *Marron v. United States,* 275 U.S. 192, 48 S. Ct. 74, 72 L.Ed. 231 (1927), intoxicating liquors were the object of the search; in *Phelps v. State,* 598 P.2d 254 (Ct. Crim. App. Okl. 1979), police were searching for a corpse; and in *State v. Starke,* 81 Wis. 2d 399, 260 N.W.2d 739 (1978), specific documents were sought. In those cases and in *State v. Phillips,* 366 A.2d 1203 (Del. Super. Ct. 1976), and *United States v. Highfill,* 334 F. Supp. 700 (E.D. Ark. 1971), the items sought were particularly described. The same is true for *United States v. Feldman,* 366 F. Supp. 356 (D. Haw. 1973).

*Arguendo,* once the tables were found, if they were the only particularly described items, the police would not have been authorized to search further. However, the warrant also authorized a search for standard American playing cards, which could have been secreted anywhere in the premises, even in receptacles. We have not been directed to any authority indicating that the police were not authorized under the circumstances to look for all the

evidence available against the operators of the gambling game, even though secreted in receptacles.[8]

## II.

Awaya cites *State v. Nobuhara,* 52 Haw. 319, 474 P.2d 707 (1970), and Hawaii Revised Statutes (HRS) § 712-1230 (Supp. 1984)[9] to support his proposition that the money and jewelry should be returned, because there was no showing below that the money or the jewelry was "used as a bet or stake in gambling activity." We do not consider that either *Nobuhara* or HRS § 712-1230 requires the return of the money and jewelry in the case at bar, since the government is not proposing their forfeiture, but merely asserts that their retention is necessary to its continuing investigation of the illegal activities.

In *Nobuhara,* the defendants, having been convicted and sentenced for gambling, appealed from the circuit court's order forfeiting more than $15,000 seized from them at the time of their arrest. The supreme court held that, without a showing that the money seized was tied to defendants' gambling activities, it was not forfeitable under HRS § 746-12.[10] Here, Awaya has not been convicted and the government is not attempting to forfeit the money and the jewelry.

---

[8] We recognize the danger to our citizenry inherent in a situation where the authorities may use a warrant authorizing a search of premises for a minuscule article as an excuse to conduct an unauthorized general search. Such a chilling prospect tempts us to adopt the distinction advanced by Awaya. However, the circumstances of this case will not allow it.

[9] HRS § 712-1230 provides:

Forfeiture of property used in illegal gambling. Any gambling device, paraphernalia used on fighting animals, or birds, implements, furniture, personal property, vehicles, vessels, aircraft, or gambling record possessed or used in violation of a section in this part, or any money or personal property used as a bet or stake in gambling activity in violation of a section in this part, may be ordered forfeited to the State, subject to the requirements of section 701-119, where the evidence satisfies the court by its preponderance that the owner allowed the illegal use of his property.

[10] HRS § 746-12 (1968), the statute in effect when *Nobuhara* was decided, provided:

Evidence; seizure and forfeiture of property. All moneys or other personal property offered for sale or distribution, or used, in violation of sections 746-1 to

The State contends, however, that its evidence showed that the property was an integral part of the illegal gambling operation and was, therefore, subject to retention as contraband. We hold that such a showing, in the circumstances of this case, is insufficient. Money is inherently legal, and is not contraband unless used in an unlawful manner. *People v. Snyder,* 52 Ill. App. 3d 612, 614, 367 N.E.2d 752, 754 (1977). In this jurisdiction, HRS § 712-1230 indicates that money used in gambling is not contraband unless it was "used as a bet or stake in gambling activity." That is also *Nobuhara's* clear holding, and the burden of proof is on the State. *State v. Nobuhara, supra; State v. Brighter, supra.* In the absence of such proof, the question becomes whether the State may continue to retain the property while it decides whether to file an action based thereon.

There are limitations on the length of time the government may retain legally seized evidence without filing criminal charges based thereon before a *de facto* forfeiture has occurred. *United States v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pennsylvania,* 584 F.2d 1297, 1303 (3rd Cir. 1978) (hereafter *Taylor Ave.).* Moreover, "a defendant has a right to property *lawfully* seized where the government no longer has reason for its retention." *State v. Brighter,* 1 Haw. App. at 252, 617 P.2d at 1229 (emphasis in original). And in such case a motion or petition for return of the property may be addressed to the equity jurisdiction of the proper court. *Mr. Lucky Messenger Service, Inc. v. United States,* 587 F.2d 15, 16-17 (7th Cir. 1978) (hereafter *Mr. Lucky).* In the absence of arrest or indictment, or institution of forfeiture procedures, a motion for suppression and return of property may be treated as one solely for return of property. *See Shea v. Gabriel,* 520 F.2d 879 (1st Cir. 1975).

*Mr. Lucky, supra,* is illustrative of the process that should be used in determining whether the property is to be returned. There,

---

746-15, shall be subject to seizure by the police officer or officers making arrests of offenders under this chapter, and may be used as evidence on the trial of such offenders. Upon conviction of such offenders of any violation of this chapter, such moneys or other personal property shall be declared by the court forfeited to the county in which the offense is committed, subject to section 746-13. The court may also, subject to section 746-13, order the destruction by any police officer of any such property, except moneys so forfeited.

appellant's property, including $65,000 in currency, was seized. After approximately a year and a half, when no charges were brought, appellant filed suit to recover the currency, without attacking the legality of its seizure. In reversing the trial court's dismissal of the complaint, the seventh circuit court held that the complaint constituted an attack on the unreasonable length of time that the government had held the property without charging a criminal offense. The appellate court held that, although the government is not required to secure an indictment immediately after property is seized, if no charges are filed within a year and a half after seizure, the critical inquiry is whether the government had adequate justification for retaining the property for so long without bringing charges. If the government is unable to present evidence justifying such a delay, constitutional violations emerge which would seem on equitable principles to mandate that the property be returned.

In determining the issue whether the property may be retained by the government or should be returned, the court should determine whether the length of time the property is held without legal action is reasonable by weighing the interests of the government in holding the property against the owner's right to its use. *Taylor Ave.*, 584 F.2d at 1302; *Shea v. Gabriel*, 520 F.2d at 882. Additionally, the court should examine whether the retention of the property is reasonably related to the government's asserted need for it. *Taylor Ave.*, 584 F.2d at 1304. In short, the court should "balance the equities." *See Mr. Lucky*, 587 F.2d at 17.

In the instant case, the court below did not treat Awaya's motion as an equitable action and did not engage in the requisite balancing process, because of its ruling that the property was illegally seized. The trial court ruled that the delay in either charging Awaya or bringing a forfeiture action was not an issue and that it did not have equity jurisdiction. As a result of the court's view of the case, the State did not present evidence regarding the justification for the delay or its need for the evidence.[11] Since we hold the trial court

---

[11] In a chambers session prior to the second hearing in this matter, the trial court indicated it was inclined to grant Awaya's motion. At the hearing the State, rather than futilely presenting his evidence, made an offer of proof. The offer was "accepted" by the court. We are not sure what the court meant by that.

erred in its ruling on the return and suppression of the money, it becomes necessary to balance the equities.

On remand the court is instructed to treat the motion as an equitable action for return of the money; receive evidence relating to the factors noted above; weigh the equities of Awaya and the government to possession of the money; and determine whether the money should be returned. The court is also directed to order the jewelry restored to Awaya.

Reversed in part and remanded for further proceedings consistent with this opinion.

*Peter Van Name Esser,* Deputy Prosecuting Attorney, *(Ernest J. Freitas, Jr.,* Deputy Prosecuting Attorney, on the briefs), City and County of Honolulu, for respondents-appellants.

*Jerel D. Fonseca (David C. Schutter* with him on the brief; *Schutter, Cayetano & Playdon* of counsel) for petitioner-appellee.