70 P.3d 648

Bernard K.B. LUM, and Hester T. Lum, Movants–Appellees,

v.

Lee D. DONOHUE, Chief of Police, City and County of Honolulu, Respondent–Appellant,

and

Dai–Tokyo Royal Insurance Company, Inc., Intervenor–Appellee.

and

George Grace, III, dba Commercial Equipment Services, Movant–Appellant,

v.

Lee D. DONOHUE, Chief of Police, City and County of Honolulu, Respondent–Appellee,

and

First Insurance Company of Hawai‘i, Ltd., Intervenor–Appellee.

Nos. 24106, 24418.

Intermediate Court of Appeals of Hawai‘i.

April 30, 2003.

Certiorari Granted June 2, 2003.

As Amended June 5, 2003.

As Corrected June 19, 2003.

Eric A. Seitz, and Lawrence I. Kawasaki, on the briefs, Honolulu, for movants-appellees Bernard K.B. Lum and Hester Lum, in No. 24106, and for movant-appellant George Grace, III, in No. 24418.

Paul T. Tsukiyama, Deputy Corporation Counsel, City and County of Honolulu, on the briefs, for respondent-appellant Lee D. Donohue, Chief of Police, City and County of Honolulu, in No. 24106, and for respondent-appellee Lee D. Donohue, Chief of Police, City and County of Honolulu, in No. 24418.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

Two cases are presented on appeal (Nos. 24106 (S.P. No. 00–01–0167) & 24418 (S.P. No. 00–01–0493)) involving similar situations and raising related legal issues. We consolidate them for disposition purposes. Hawai'i Rules of Appellate Procedure Rule 3(b) (West 2002).

In the former case (the *Lum* case), Respondent Lee D. Donohue, Chief of Police, Honolulu Police Department, City and County of Honolulu (HPD), appeals the January 30, 2001 judgment of the circuit court of the first circuit.[1] The judgment was entered "in favor of Movants Bernard K.B. Lum and Hester T. Lum [ (the Lums),]"

[p]ursuant to the (1) Order Granting Motion for Return of Property Filed March 29, 2000, entered by this Court on or about May 9, 2000, and (2) Order Denying Respondent's Motion for Additional Findings and Amendment of Order Granting Motion for Return of Property Filed May 9, 2000 and Granting Dai–Tokyo Royal Insurance Company, Inc.'s [ (DTRIC) ] Motion to Intervene Filed May 19, 2000, entered by this Court on or about June 23, 2000.

The Lums brought their originating motion pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 41(e).[2] In essence, the judgment ordered HPD to return a truck the police had taken from the Lums in December 1998. In the *Lum* case, we vacate and remand.

In the latter case (the *Grace* case), Movant George Grace, III, dba Commercial Equipment Services (Grace), appeals the court's[3] June 26, 2001 judgment in favor of HPD, entered

[p]ursuant to the Findings of Fact, Conclusions of Law and Order Denying Movant's Motion for Reconsideration of Order Denying Motion for Return of Property filed December 14, 2000[.]

In effect, the judgment denied Grace's request that the court order HPD to return two trucks the police had taken from him on January 2, 1999. In the *Grace* case, we affirm.

## I. The *Lum* Case.

### A. Background.

On December 17 or 18, 1998, the police seized a truck, which was ostensibly owned by and registered to the Lums, and impounded it. After about sixteen months had passed without legal process by the government or return of the truck, the Lums commenced S.P. No. 00–01–0167 with their March 29, 2000 motion for return of the truck. The Lums described the truck as "a 1994 F150 Ford Extended Cab, Short Bed, Flareside Truck[,]" and identified it by its vehicle identification number (VIN), 2FDHF37H9RCA14379.

At the May 8, 2000 hearing on the Lums' motion, their counsel argued:

anything so obtained, or both. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial.

---

**1.** The Honorable Michael A. Town, judge presiding.

**2.** Hawai'i Rules of Penal Procedure (HRPP) Rule 41(e) (West 2000) reads:

A person aggrieved by an unlawful search and seizure may move the court having jurisdiction to try the offense for the return of the property, or to suppress for use as evidence

**3.** The Honorable Reynaldo D. Graulty, judge presiding.

This truck has been held since it was initially seized, according to the receipt which you have before you, on 12–17–98. There has been no action taken. It was seized without a warrant. There have been no criminal charges filed, there's been no forfeiture action filed.

HPD's attorney responded:

[COUNSEL FOR HPD]: Okay. Your Honor, the Chief of Police is going to be opposing this motion on two grounds basically.

The first is that the vehicle in question since its impoundment has been inspected and it shows signs of having an altered or defaced [VIN]. Now, under [Hawai'i Revised Statutes (HRS) §§ ] 286–43 [4] and [-]44 [5] this subjects the vehicle to a summary forfeiture to the government because it is basically unlawful to be in possession of a vehicle or motor vehicle parts which— on which the VIN number has been altered or defaced.

. . . .

THE COURT: Are you going to be filing charges?

[COUNSEL FOR HPD]: That I was unable to confirm or deny with the prosecutor's office or the federal government, and—well, that was basically our second argument also in that under [HRS § ] 708–830(7), the receipt of stolen property section, it's a class C felony and the statute of limitations has not yet run on that. That would be a secondary argument in opposition to this motion.

(Footnotes supplied). HPD's attorney added that,

under the asset forfeiture statute[, HRS § ] 712A–5(1)(d),[6] contraband is subject to seizure and summary forfeiture without regard to the asset forfeiture provisions of Chapter 712.

Now, we're contending that this vehicle constitutes contraband under [HRS §§ ]286–43, 286–44 because it's illegal to possess. A contraband is defined under the asset forfeiture section as property, the possession of which is illegal.[7]

(Footnotes supplied).

The court then allowed HPD Lieutenant Alan Anami (Lieutenant Anami) to testify. On direct examination, Lieutenant Anami remembered that, on the day before the truck was impounded, senior automotive special agent Clement Kaonohi (agent Kaonohi) of the National Insurance Crime Bureau (NICB) told him that a Ford pickup truck located in the Waipahu industrial area bore a VIN inconsistent with its body type. Lieu-

---

4. Hawai'i Revised Statutes (HRS) § 286–43 (1993) provides:

It shall be unlawful for any person to wilfully deface, destroy, or alter the serial number, a component part number, or identification mark of any vehicle, so placed or stamped on any vehicle by the manufacturer for the purpose of identifying the vehicle or its component parts, nor shall any person place or stamp any serial, motor, or other number or mark upon a vehicle, except one assigned thereto by the director of finance.

This section does not prohibit the restoration by an owner of an original motor, or other mark or number, when the restoration is authorized in writing by the director of finance, nor prevent any manufacturer from placing in the ordinary course of business, numbers or marks upon new motor vehicles or new parts thereof.

5. HRS § 286–44(a) (Supp.2002) reads:

(a) It shall be unlawful for any person to possess a motor vehicle, a motor block, or any part thereof, knowing that the motor number, serial number, or manufacturer's number, placed on the same by the manufacturer for the purpose of identification, has been changed, altered, erased, or mutilated, for the purpose of changing the identity of the motor vehicle, motor, motor block, or any part thereof. All such motor vehicles, motor blocks, or parts from which the manufacturer's identification number has been removed, defaced, or altered shall be forfeited to the county where found and if not identified may be sold at public auction or destroyed. If identified, all persons having an interest in the motor vehicle, motor block, or part shall be notified, there shall be assigned a new registration number, and the motor vehicle, motor block, or part shall be returned to the owner entitled to possession.

6. HRS § 712A–5(1)(d) (1993) provided: "The following is subject to forfeiture: Contraband, which shall be seized and summarily forfeited to the State without regard to the procedures set forth in this chapter[.]"

7. HRS § 712A–1 (1993 & Supp.2002) defines "Contraband" as "any property the possession of which is illegal."

tenant Anami described the truck he found as he arrived on the scene:

The truck that we located, according to the license plate number provided by special agent Kaonohi, he described the truck to us as a Ford extra cab which is [an] extended cab, pickup truck. It appeared to be of a low-rider nature where the truck had been lowered bearing a certain license plate number that was parked on Leonui Street.

Upon arrival [on or about December 18, 1998] in the afternoon, we did locate a purple colored Ford pickup truck bearing the exact license number that agent Kaonohi had provided to us, at which truck [ (sic) ] cursory checks of the truck as it was parked on the public sidewalk area of Leonui Street revealed that the serial number attached to the dashboard which we could see plainly visible through the front windshield was in fact the exact same serial number that agent Kaonohi has reported to us as being registered in the City registration computer but yet the truck, in fact the body style did not match that serial number.

. . . .

When you look at a VIN which consists of 17–digits ever since 1983, it's been standardized throughout the world, the last six digits of a VIN is what we refer to as a sequential build number as it comes off the factory line. The first eleven digits of a VIN tells the reader of the VIN certain characteristics such as the make and model of the vehicle, the year, the body style, transmission style, engine style, and so on and so forth. So actually by looking at a VIN and using [NICB's] vehicle manual, you can actually determine what kind of vehicle is represented by the VIN.

Lieutenant Anami continued:

The most glaring discrepancy is the VIN showed that the vehicle should have been a F–350 standard cab pickup truck which is basically a two-seater bench seat cab. And the vehicle that we were looking at was—appeared to be a F–150 extended cab, which means that in back of the rear seat there's another passenger compartment where people can sit.

Lieutenant Anami was then asked if anyone approached him while he was examining the truck:

A. While we were standing adjacent to the truck and observing the VIN through the front windshield, we were approached by a male who came from the makai side of Leonui Street from a repair shop appeared to be a warehouse area and as we were dressed in civilian clothes he walked up to us and he asked, you know, if there was a problem, that it was his truck, at which time we identified ourselves to him as police detectives assigned to vehicle theft.

Q. And were you able to identify this individual?

A. We asked the male who he was and he identified his name as Mike Lum.

Q. Mike Lum. Now, did he represent himself as the owner of the truck?

A. We asked him if he owned the truck and he said, well, the truck belongs to him but is actually registered to his parents.

Q. Okay. Based on your initial finding that this body type of this cab did not match the VIN number, did you indicated [ (sic) ] to Mr. Lum that you were going to impound the truck?

A. Well, initially we informed him that there was a major discrepancy between the body style and the VIN of his truck and that we had received information via NICB that, you know, this truck was possibly not the truck as being represented as [ (sic) ] and we would like to do additional checks on his vehicle at which time he readily agreed. He unlocked his truck and opened up the engine hood. He unlatched it so we could open up the engine—the hood of his vehicle so we could make additional secondary checks of serial numbers.

Q. Now, what did that reveal?

A. That revealed that it appeared as though the truck again did not match the characteristics represented by the VIN number. At that time we informed Mike Lum that because of the numerous discrepancies between the VIN of the vehicle and the vehicle we were looking at, that we were going to impound the vehicle for defaced and altered serial number and addi-

tional checks would be made on the vehicle.[8]

(Footnote supplied.) Lieutenant Anami explained the various levels of VINs:

> Assigned to every vehicle manufactured or manufactured for sale in the United States are three types of VINS. The first one is commonly referred to in the industry as a public VIN. This is usually the VIN plate that is located on the dashboard which can be readily seen just by standing adjacent to the vehicle.
>
> There's a second VIN which is referred to as a secondary VIN. And the secondary VINS are usually located somewhere in the vehicle in which a vehicle component has to be opened or lifted up to reveal. And then there's a third type of VIN which is referred to as a C–VIN or confidential VIN and this is a VIN—this is a number that is located somewhere on the vehicle which is known usually only to the factory or NICB or law enforcement that has to do particular vehicle theft investigations.

Lieutenant Anami then recounted his examination of the truck's C–VIN:

> The C–VIN location that was initially revealed to us by NICB when we initially inspected the vehicle on Leonui Street, where the location was supposed to have been, there was no obvious signs of a C–VIN in that location which kind of raised our suspicions because usually in a C–VIN location you would be able to see at least part of the C–VIN which would confirm that the C–VIN is in the location, but we weren't able to see any part of the C–VIN which, like I say, raised our suspicions.
>
> When we made subsequent inspections of the truck after it had been impounded, we actually found the C–VIN location and what it revealed to us is that it appeared as though somebody had ground off the factory serial numbers because we could see slight striations in the metal that resembled that of a grinder.
>
> In a location that was close to where the C–VIN location was supposed to have been by the factory, we did find a set of numbers stamped into the metal which coincid-

ed with the serial number that we located on the dashboard. But these serial numbers that had been stamped into the metal we confirmed were not of the type that the factory uses to stamp the numbers into the metal.

Following his investigation, Lieutenant Anami submitted the case for criminal prosecution to the U.S. Attorney's office: "[I]t went to two different [assistant U.S. attorneys, who in the interim were both transferred,] and is now sitting in the supervisor's office of the U.S. Attorney's Office pending a docket number being processed to a federal grand jury indictment."

On cross-examination, Lieutenant Anami confirmed that he had concluded the truck was stolen. He had also determined "who it was stolen from[.]" Lieutenant Anami denied a suggestion that the cab of the truck had been modified after the Lums purchased it. He acknowledged that no forfeiture action had yet been taken and no warrant had been sought to hold the truck.

After hearing argument from counsel, the court orally granted the Lums' motion:

> Certainly under [HRPP] Rule 41(e) it appears that the truck was seized. There was no notice given to the owners, no action filed, administratively, civilly or criminally there have been no charges filed. There's the specter of possible federal charges but I haven't heard anything whatsoever that would justify the retaining of this vehicle so I will grant the motion to return it. It should be returned, counsel, as soon as reasonably possible, subject, [counsel for the Lums], to other proceedings filed at the right time, either criminal, administrative or civil.

The court filed its written order for return of the truck, "forthwith[,]" on May 9, 2000.

On May 19, 2000, HPD filed a motion for additional findings and reconsideration of the court's order granting return of the truck. In its memorandum in support, HPD argued that the court should remedy its failure to determine (1) whether the truck was contraband under HRS § 286–44(a) and thus subject to summary forfeiture under HRS

---

8. Apparently, the police left a receipt for the vehicle with Mike Lum.

chapter 712A; and (2) whether "a genuine question as to rightful ownership of the vehicle exists, in light of an assertion of ownership by DTRIC insurance company."

On the same day, DTRIC filed a motion to intervene. DTRIC alleged that a 1993 Ford F–150 pickup truck registered to Rodney G. Mores (Mores) and insured by DTRIC had been stolen on May 20, 1996 but never recovered. The VIN of the truck was 1FTEX15Y3PKA97103. DTRIC claimed an interest in the truck because it had paid Mores $13,005 and taken title to the truck in order to settle his claim of theft and loss. It was not until May 16, 2000 that HPD informed DTRIC that its truck had been recovered and that a motion for its return to the Lums was pending.

At the June 22, 2000 hearing on the two motions, HPD's attorney informed the court that the VIN found on the truck taken from the Lums rightfully belonged to a Ford F–350 regular cab truck once owned by an outfit called Commercial Lift. This latter truck

> got into an accident, was declared a total loss, and was subsequently purchased by a party by the name of Grace, which [ (sic) ] purchased it as a salvage vehicle.

> However, the truck that's in HPD's custody is a non-altered F–150, which is a completely different kind of a truck. And when HPD asserts that it's a non-altered truck, they've examined this truck a number of times and it's their conclusion that because the original factory riveting is still in place, that there is no way that this truck could be a rebuilt truck from a Ford–350. In other words, they could not have replaced the regular cab with an extended cab in light of the fact that the original factory rivets still remain.

HPD's counsel also told the court that the U.S. Attorney's office would not be prosecuting the case, but that the State was looking at the case for possible prosecution on its part.

In response to the court's concern about the ultimate disposition of the truck, HPD's attorney maintained that HPD should keep the truck, and that

> the quickest and fairest way to determine it would be for HPD to institute an interpleader action under [Hawai'i Rules of Civil Procedure] Rule 22.[9] It would allow due process for both parties asserting interest to make their case, establish ownership, and a Court will then decide which party is the lawful owner of this truck.

(Footnote supplied.) DTRIC's counsel joined in HPD's position, but informed the court that she had made arrangements with counsel for the Lums for preservation of the truck pending determination of ownership, should the court decide against reversing its order for return of the truck to the Lums. At the close of the hearing, the court took to the two motions under advisement.

On June 23, 2000, the court entered its written order regarding HPD's motion and DTRIC's intervention:

> (1) [HPD's] motion for additional findings and amendment of order granting return of property filed May 9, 2000 shall be and hereby is denied without prejudice as to the State's filing of forfeiture or other proceedings if it is deemed appropriate; and

> (2) The subject Ford truck shall be provisionally returned forthwith to [the Lums] and/or their Attorneys, ... with appropriate conditions as agreed upon between [DTRIC] and [the Lums] subject to further hearing if not agreed upon; and

9. Hawai'i Rules of Civil Procedure Rule 22 (West 2002) provides:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this role supplement and do not in any way limit the joinder of parties permitted in Rule 20.

(3) [DTRIC's] motion to intervene filed May 19, 2000 shall be and hereby is granted.

After abortive appeals of the court's orders by HPD and DTRIC, the court entered its January 30, 2001 judgment. HPD then filed timely notice of this appeal.

### B. Discussion.

▮ HPD raises the following points of error in its appeal:

1. The Circuit Court erred in failing to make a determination as to true ownership of the vehicle in question, or in failing to allow the issue of ownership to be determined by interpleader action as requested by [HPD], prior to granting possession of the vehicle to [the Lums].

. . . .

2. The Circuit Court erred in failing to make a determination as to whether the vehicle in question constituted contraband, which would not be subject to return to any party other than the rightful owner of the vehicle.

Opening Brief at 11–12. We agree. The court erred in failing to determine whether the truck was contraband. The court instead concluded that because no notice had been given to the Lums and no proceeding, criminal or otherwise, had been initiated with respect to the truck, HPD must return it. Accordingly, the court denied HPD's motion for additional findings and amendment of the order granting return of property, "without prejudice as to the State's filing of forfeiture or other proceedings if it is deemed appropriate[.]"

In light of the substantial evidence before the court, indicating that the truck HPD seized from the Lums was a stolen truck with VINs altered to conceal its status, it was incumbent upon the court to entertain and decide whether that was indeed the case, especially after DTRIC, the putative true owner, had intervened. In ordering the truck returned to the Lums without making that determination, the court proceeded without deciding real and salient questions about the legality of returning the truck to the Lums, the opposing ownership rights of DTRIC, and HPD's statutory duties. HRS

§§ 286–43 & –44(a). Even HRPP Rule 41(e), upon which the Lums based their motion for return of property, requires that "[i]f the motion is granted the property shall be restored *unless otherwise subject to lawful detention* and it shall not be admissible in evidence at any hearing or trial." (Emphasis supplied.) If indeed applicable here, HRPP Rule 41(e) would have obligated the court to make a threshold contraband determination. *State v. Brighter,* 1 Haw.App. 248, 253, 617 P.2d 1226, 1229 (1980) (in an appeal from the denial of an HRPP Rule 41(e) motion for return of property suppressed as evidence, we held that, "[s]ince the motion to suppress was granted, Appellant Brighter had a right to possession of the seized property unless, as the government contends, it was contraband").

The Lums answer that,

[i]n the absence of a warrant, the seizure of the Lums' vehicle was presumptively unconstitutional in violation of both the Fourth Amendment to the United States Constitution and Article I, Section 7, of the Constitution of the State of Hawai'i. See, e.g., *State v. Rosborough,* 62 Haw. 238, 240, 615 P.2d 84, 86 (1980); *State v. [Kaluna],* 55 Haw. 361, 363, 520 P.2d 51, 55 (1974). There is no testimony or evidence in the record of this case that would support any contrary finding, and HPD never has attempted to defend, justify, or explain its initial seizure of the Lums' truck.

Answering Brief at 3.

▮ "We review questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Accordingly, we review questions of constitutional law *de novo* under the 'right/wrong' standard." *State v. Rogan,* 91 Hawai'i 405, 411, 984 P.2d 1231, 1237 (1999) (citations and some internal quotation marks omitted).

▮ In the Lums' case, we believe a warrant was not required. In *Florida v. White,* 526 U.S. 559, 561, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999) the United States Supreme Court held: "In this case, we must decide whether the Fourth Amendment requires the police to obtain a warrant before

seizing an automobile from a public place when they have probable cause to believe that it is forfeitable contraband. We hold that it does not." For this holding, the *White* court relied upon (1) its "[r]ecognition of the need to seize readily movable contraband before it is spirited away[,]" *id.* at 565, 119 S.Ct. 1555 (citations omitted); and (2) "our Fourth Amendment jurisprudence [that] has consistently accorded law enforcement officials greater latitude in exercising their duties in public places." *Id.* (the police had seized the defendant's car in his employer's parking lot). We have found no indication the result would be different under our Hawaiʻi Constitution. "So long as the searching officer is in a position where he is lawfully entitled to be, the seizure of *any* evidence of crime is permissible." *State v. Davenport*, 55 Haw. 90, 100–101, 516 P.2d 65, 72 (1973) (citation omitted; emphasis in the original) (noting the "easy mobility of such contraband," in upholding a police search, upon a warrant to search the defendant's house for marijuana, of a matchbox that revealed amphetamine and cocaine).[10]

Even assuming, *arguendo*, that the Lums are correct in this constitutional respect, the question germane in this case still remains— was the truck contraband? *See, e.g., Trupiano v. United States*, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948) ("It follows that it was error to refuse petitioners' motion to exclude and suppress the property which was improperly seized [without a warrant]. But since this property was contraband, they have no right to have it returned to them."); *United States v. Jeffers*, 342 U.S. 48, 54, 72 S.Ct. 93, 96 L.Ed. 59 (1951) ("Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial."). *Cf. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 699, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (upholding dismissal of forfeiture petition where the evidence illegal-

ly obtained and suppressed was the only evidence rendering the property contraband). And that is the threshold question the court failed to answer.

■ The Lums further argue:

Even if the initial seizure were proper, HPD's failure to initiate any forfeiture or other appropriate action to resolve possessory or ownership interest in the Lums' truck cannot be justified or explained. The very statute cited in [HPD's] brief mandates that in the event that a motor vehicle allegedly has been altered, the police "*shall*" notify "all persons having an interest in the motor vehicle .... and the motor vehicle *shall* be returned to the owner entitled to possession." [HRS § ] 286–44(a) (emphasis added). The Hawaiʻi forfeiture provisions contained in [HRS] Chapter 712A also specify the steps that law enforcement officers must follow to give notice and afford appropriate due process in connection with any seizure of private property.

Answering Brief at 3–4. We first note in this respect that the Lums were immediately aware of the seizure of the truck, and by their originating motion brought it to the attention of a plenipotent forum. But regardless of the propriety of the process that brought us to this point, we must insist that the court go forward and fulfill the statutory mandate that the truck "be returned to the owner entitled to possession[,]" HRS § 286–44(a) (Supp.2002), and that can only be accomplished if the court first determines whether the truck is contraband under the statute. Besides, the proper procedure can only be discerned by going forward in this respect, not backward. HRS § 712A–1 (1993 & Supp.2002) (" 'Contraband' means any property the possession of which is illegal."); HRS § 712A–5(1)(d) (1993) ("Contraband ... shall be seized and summarily forfeited to the State without regard to the procedures set forth in this chapter[.]").

In sum, we conclude that the court's January 30, 2001 judgment must be vacated.

---

10. *See also* HRS § 712A–6(1)(c)(iv) (1993 & Supp.2002) ("Personal property subject to forfeiture under this chapter may be seized for forfeiture by a law enforcement officer: By making a seizure for forfeiture without court process as follows: The law enforcement officer has probable cause to believe that the property is subject to forfeiture[.]").

## II. The *Grace* Case.

*A. Background.*

On January 2, 1999, HPD seized and impounded three trucks from Grace.[11] Two of them were Ford trucks, license plate numbers LUA 02 and 224 TPC, which are the subject of this appeal.[12] After the police had held the two trucks for almost nineteen months, Grace commenced S.P. No. 00–01–0493 with his September 29, 2000 motion for return of property. Grace brought his motion pursuant to HRPP Rule 41(e).

On October 16, 2000, First Insurance Company of Hawai'i, Ltd. (First Insurance) filed a motion to intervene. First Insurance claimed that

> [o]n or about November 15, 1997, a 1996 Ford Flatbed truck, VIN 1FDLF47F5TEA95574, bearing Hawai'i License No. 012 TYN [ (sic) ], was stolen from the vicinity of Ahua and Kaihikapu Streets.... At the time of the theft, said truck was owned by TM Leasing Corp., who [ (sic) ] was insured against the theft by [First Insurance.] First Insurance paid TM Leasing Corp. the value of the stolen truck, pursuant to the terms of its insurance policy, and TM Leasing Corp[.], in turn, transferred ownership of the truck to First Insurance.

The court apparently granted First Insurance's motion.[13]

After an October 16, 2000 hearing on Grace's motion for return of property, the court entered a November 16, 2000 order denying the motion,

> on the basis that this Court lacks subject matter jurisdiction over a motion filed pursuant to [HRPP] Rule 41(e) in the absence of a related criminal proceeding.

On November 27, 2000, Grace filed a motion for reconsideration, arguing that a concurrent criminal proceeding is not a desideratum for subject matter jurisdiction. The court

agreed to reconsider, and held a December 12, 2000 evidentiary hearing "for the purpose of determining whether [Grace] possessed the subject property—two Ford trucks—knowing that the [VINs] had been changed or altered for the purpose of changing the identity of the trucks." Thereupon, on December 14, 2000, the court filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On November 15, 1997, Michael Lee [ (Lee) ] of TH Leasing Corp[.] reported to [HPD] that a dark blue metallic 1996 Ford F450 flatbed truck owned by his company had been stolen. Lee purchased the truck directly from the manufacturer in late 1996. The license plate number was 012 TNY and the [VIN] was 1FDLF47F5TEA95574. Lee made substantial modifications to the truck, including installation of "Senior West Coast" mirrors, and heavy-duty wiring. Lee also testified that there was damage to the lower part of the driver's side door of the cab.

2. Lee filed a claim and settled with his insurer, First Insurance.

3. On November 21, 1997, [Grace], on behalf of his company, Commercial Equipment Services, purchased a 1989 Ford F350 flatbed truck for five hundred dollars from a Matthew Makekau. The truck was originally purchased from the manufacturer by Grace Pacific Corp. The truck was given a license plate with the number LUA 02; the VIN was 2FDKF37G9KCA80529.

4. In November, 1998, Lee observed a pink Ford truck with license plate number LUA 02 parked in the Kapalama area. Lee inspected the truck and believed it to be the 1996 F450 that he reported stolen on November 15, 1997. Lee subsequently provided this information to HPD.

---

**11.** George Grace, III, dba Commercial Equipment Services (Grace), Movant–Appellant in No. 24418, is the son-in-law of Bernard K.B. Lum and Hester T. Lum (the Lums), Movants–Appellees in No. 24106.

**12.** The third truck was returned to Grace shortly after January 2, 1999.

**13.** The November 16, 2000 order denying Grace's motion for return of property names First Insurance Company of Hawai'i, Ltd. as "Intervenor[.]"

5. In December, 1998, [Lieutenant Anami] of the HPD Auto Theft Detail went to [Grace's] place of business to make inquiry as to the Ford truck with license number LUA 02. [Grace] met with Anami and offered to make his entire fleet of vehicles available for inspection.

6. On January 2, 1999, Anami and other HPD personnel conducted their inspection of [Grace's] fleet. Inspection of LUA 02 revealed: measurements of the truck's frame showed it to be an F450, and not an F350; the 7.3 liter diesel engine and heavy-duty wiring were factory installed. As a result of these and other factors, LUA 02 was impounded and taken to the City and County yard at Manana in Pearl City.

7. On January 2, 1999, Lee was called by HPD to inspect LUA 02. In addition to the items set forth above, Lee observed: metallic blue paint in the door areas which could only have been applied at the factory prior to assembly; the cab had sustained damage in the same area as Lee's truck.

8. Based on all of these factors, Lee concluded that LUA 02 was his Ford F450 with license number 012 TNY that was stolen on November 15, 1997.

9. On January 12, 1999, HPD conducted a further inspection of LUA 02 with assistance of Buster Komori of Buster's Repair Services, Inc. A [C–VIN] was found on a major component of the truck; this [C–VIN] matched that of Lee's stolen truck. Additionally, the rear axle tag on LUA 02 was found to match the assembly and the internal gear ratio specifications for the truck specifically ordered by Lee.

10. At the January 2, 1999 inspection, HPD impounded another truck, a silver 1990 Ford F350 with license number 224 TPC and VIN 1FDJ37M8LKA06582.

11. A Ford truck with license number 224 TPC was previously owned by Kaulana Roofing & General Contracting; it was involved in an accident on June 27, 1998 and sustained substantial front end damage.

12. After the accident, James Balsai, a damage inspector with First Insurance, inspected 224 TPC and found that the truck's frame had buckled and become distorted; he declared it a total loss. It was thereafter put up for auction.

13. [Grace] has stated that he purchased the Ford truck with license number 224 TPC from United Truck Rental.

14. At the January 2, 1999 inspection, the VIN of 224 TPC was found to have been tampered with; there were grind marks around the VIN, a number "6" appeared to have been inverted, and the font-type differed from what the manufacturer would have specified.

15. There were no indications that any work had been done to repair a damaged frame. The rivets were original "heat rivets" which could only have been installed at the factory; had repair work been carried out, nut and bolt assembly would have replaced the original heat rivets.

16. The original factory color of the truck with license number 224 TPC was white; the inspection revealed that the subject vehicle's original factory color was silver.

17. [HPD]'s Exhibit C indicates that on January 29, 1999, HPD conducted a second inspection of 224 TPC at Buster's Repair Services. Two sets of complete VIN numbers were found stamped on the same side of the rail. The number "6" was inverted in the second set, and is indicative of the frame VIN having been restamped.

18. As to both subject trucks, the [VINs] were switched, added or changed for the purpose of changing the identity of the vehicles.

19. Based on the totality of circumstances, and the credible evidence and testimony presented, the Court finds that [Grace] possessed motor vehicles—the trucks with license numbers LUA 02 and 224 TPC—knowing that the serial number or manufacturer's numbers had been changed or altered for the purpose of changing the identity of the motor vehicles.

20. LUA 02 and 224 TPC have remained in [the] possession of HPD since being impounded.

## CONCLUSIONS OF LAW

1. *HRS* § 286–44(a) states in pertinent part:

> It shall be unlawful for any person to possess a motor vehicle ... knowing that the serial number, or manufacturer's number ... has been changed [or] altered for the purpose of changing the identity of the motor vehicle ... All such motor vehicles ... shall be forfeited to the county where found and if not identified may be sold at a public auction or destroyed. If identified, all persons having an interest in it [ (sic) ] shall be notified, there shall be assigned a new registration number and it [ (sic) ] shall be returned to the owner entitled to possession.

2. In *HRS* § 712A–1, "Contraband" is defined as any property the possession of which is illegal. As the court has made the factual determination that [Grace] knowingly possessed vehicles with altered VIN numbers, both LUA 02 and 224 TPC are deemed to be contraband.

3. [Grace] has relied on *State v. Awaya*, 5 Haw.App. 547 [705 P.2d 54] (1985) in support of his assertion that if the government has seized and held property for an inordinate length of time without filing criminal charges and is unable to present evidence justifying the delay, constitutional violations emerge which may on equitable principles mandate that the property be returned.

4. In such situations, a motion for return of the property may be addressed to the equity jurisdiction of the proper court. *Awaya*, 5 Haw.App. at 555 [705 P.2d 54].

5. Under *Awaya*, however, this equitable procedure applies to property that is not deemed contraband. [HPD], through its evidence and witnesses, has established that the subject trucks are contraband, and the equity proceeding set forth in *Awaya* is not reached.

### ORDER

It is therefore the Order of the court that [Grace]'s Motion for Reconsideration of Order Denying Motion for Return of Property is Denied.

(Italics in the original). The court entered its judgment in favor of HPD on June 26, 2001, and Grace filed timely notice of this appeal on July 16, 2001.

### B. *Discussion.*

 We consider Grace's points of error on appeal *seriatim.* On each point, we quote the entire argument thereon.

Grace first argues:

> In the absence of a warrant, the seizure of [Grace's] trucks was presumptively unconstitutional in violation of both the Fourth Amendment to the United States Constitution and Article I, Section 7, of the Constitution of the State of Hawai'i. *See, e.g., State v. Rosborough,* 62 Haw. 238, 240, 615 P.2d 84, 86 (1980); *State v. [Kaluna]*, 55 Haw. 361, 363, 520 P.2d 51, 55 (1974). There is no testimony or evidence in the record of this case that would support any contrary finding, and HPD never has attempted to defend, justify, or explain its initial seizure of [Grace's] trucks.

Opening Brief at 5. Grace's first argument is identical, *mutatis mutandis*, to the Lums' first argument in their answering brief.[14] And our disposition of it must be the same as well.

While there may be some question whether constitutional concerns required a warrant in this case of a seizure on private property, *White*, 526 U.S. at 565, 119 S.Ct. 1555; *United States v. Brookins*, 228 F.Supp.2d 732, 742 (E.D.Va.2002) (interpreting the *White* holding, *supra*, to apply only where the motor vehicle is seized in a public place), nonetheless, the seizure here occurred after Grace had invited the police onto his property to inspect his trucks and the inspection turned up probable cause to believe the trucks were contraband. *Cf. Davenport*, 55 Haw. at 101, 516 P.2d at 72.

 And again, if—*arguendo*—the initial seizure was unconstitutional, that may entitle Grace to suppression of the trucks as evidence in any ensuing criminal case, but if the

14. Grace and the Lums are represented by the same attorney.

trucks are contraband, that does not betoken their return. *See, e.g., Trupiano,* 334 U.S. at 710, 68 S.Ct. 1229; *Jeffers,* 342 U.S. at 54, 72 S.Ct. 93.

Grace next contends:

> Even if the initial seizure of [Grace's] trucks were [ (sic) ] proper, HPD has failed to present sufficient evidence to establish that the subject trucks are contraband.
>
> [HRS § ] 286–44(a) indicates that a motor vehicle is *not* contraband unless its serial number, or manufacturer's number, placed on the same by the manufacturer for the purpose of identification, has been changed, altered, erased, or mutilated *"for the purpose of changing the identity of the motor vehicle."*
>
> In the instant case, HPD has presented no specific evidence showing that the alleged serial numbers, or manufacturer's identification numbers on both of the subject trucks were changed *"for the purpose of changing the identity of the motor vehicle,"* see, *State v. Nobuhara,* 52 Haw. 319, 474 P.2d 707 (1970), or that [Grace] had knowledge of any such changes, as required by the clear language of [HRS § ] 286–44(a).

Opening Brief at 5–6 (emphases in the original).

 We review a trial court's findings of fact under the clearly erroneous standard:

> [A finding of fact] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. [A finding of fact] is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Leslie v. Estate of Tavares,* 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (original brackets, citations, some internal quotation marks and block quote format omitted). In addition,

> [a]s the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous.

*State v. Eastman,* 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) (citation omitted). However,

> [a]n appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.

*Id.* (citations omitted).

 Under the foregoing standards of review, and· upon the findings of fact of the court left unchallenged by Grace on appeal,[15] it is beyond cavil that there was substantial evidence to support the court's finding that the VINs of the two trucks had been "changed, altered, erased, or mutilated, for the purpose of changing the identity of the motor vehicle[.]" HRS § 286–44(a). Further, Grace's possession of not one, but two trucks with altered VINs, when considered along with his bargain-basement purchases of two other trucks from which elements of identity for the former two trucks were apparently taken, gives substantial support to the reasonable and legitimate inference that Grace knew of the alterations and their purpose. *See Eastman,* 81 Hawai'i at 139, 913 P.2d at 65. *Cf. State v. Sadino,* 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982) ("We have consistently held that since intent can rarely be proved by direct evidence, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the act is sufficient to establish the requisite intent. Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." (Citations omitted.)).

 Finally, Grace argues:

> Whether or not the trucks are "contraband," HPD's failure to initiate any forfei-

---

**15.** On appeal, Grace challenges only finding of fact 19 and its following conclusion of law 2. It is well settled that findings of fact unchallenged on appeal are binding on appeal. *Okada Trucking Co., Ltd. v. Board of Water Supply,* 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

ture or other appropriate action to resolve possessory or ownership interests in [Grace's] trucks cannot be justified or explained. [HRS § ] 286–44(a) provides that with respect to "[a]ll such motor vehicles, motor blocks, or parts," [ (sic) ] the police "*shall* " notify "all persons having an interest in the motor vehicle, motor block, or part ... and the motor vehicle, motor block, or part *shall* be returned to the owner entitled to possession." The forfeiture provisions contained in [HRS] Chapter 712A also specify the steps that law enforcement officers must follow to give notice and afford appropriate due process in connection with any seizure of private property. Here the police know that [Grace] had purchased the trucks and legally registered them as his vehicles, and certainly claimed an ownership interest in them. Yet for almost two years HPD failed to initiate any proceedings to determine ownership or possessory interests in the subject trucks. Accordingly, HPD's refusal to return the trucks to [Grace] cannot be condoned. *Awaya v. State,* 5 Haw.App. 547, 705 P.2d 54, *cert. denied,* 67 Haw. 685, 744 P.2d 781 (1985).

Opening Brief at 6–7 (citations to the record omitted; emphases and some brackets in the original).

This final argument is unavailing. Regardless of the delay and the lack of process preceding Grace's motion for return of property, the fact before us today is, that the court found the trucks to be contraband and did not clearly err in doing so. This being so, the procedures of HRS chapter 712A did not apply. HRS § 712A–1; HRS § 712A–5(1)(d). As for Grace's citation to *Awaya*, that case is inapposite here because there, the subject money was not contraband, *Awaya*, 5 Haw.App. at 555, 705 P.2d at 61, and our prescription for the circuit court—to "balance the equities[ ]" on remand in deciding whether to return the money or allow the police to retain it pending a decision on criminal charges—was based on that threshold finding. *Id.* at 556, 705 P.2d at 61 (citation and internal quotation marks omitted). Here, the trucks were contraband, and could not be returned.

In sum, we conclude that the court's June 26, 2001 judgment must be affirmed.

### III. Conclusion.

In the *Lum* case, we vacate the court's January 30, 2001 judgment, along with the underlying May 9, 2000 order granting the Lums' motion for return of property and June 23, 2000 order denying HPD's motion for additional findings and amendment of order granting motion for return of property, and remand for proceedings not inconsistent with this opinion. We affirm that part of the June 23, 2000 order granting DTRIC's motion to intervene.

In the *Grace* case, we affirm the court's June 26, 2001 judgment.